COMMISSIONER OF CONSUMER PROTECTION ET AL. *v.*
FREEDOM OF INFORMATION COMMISSION ET AL.
(13233)
(13234)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued March 2—decision released June 7, 1988

*Mark R. Kravitz,* for the appellants in the first case (defendant The Jackson Newspapers, Inc., et al.).

*Constance L. Chambers,* assistant general counsel, with whom, on the brief, was *Mitchell W. Pearlman,* general counsel, for the appellant in the second case (named defendant).

*Robert M. Langer,* assistant attorney general, with whom were *John M. Looney,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, for the appellees (plaintiffs).

GLASS, J. This is an appeal from a decision of the trial court, *M. Hennessey, J.,* reversing a decision of the freedom of information commission (FOIC), wherein the FOIC had ordered that the named plaintiff,[1] the commissioner of consumer protection (commissioner), provide the defendants, The Jackson Newspapers, Inc. (Jackson Newspapers), and Joan Barbuto, with access to records regarding the distribution of controlled substances by physicians.

The underlying facts relating to this appeal are not in dispute. On April 11, 1984, Joan Barbuto, a reporter for the Jackson Newspapers, wrote to the commissioner, seeking disclosure of all documents generated by compliance meetings held within the last five years pursuant to General Statutes § 4-182 (c). A compliance meeting is held when an investigation by drug control agents of the department of consumer protection reveals evidence supporting the revocation of a physician's drug registration. The compliance meeting provides a physician with the opportunity to show that the drug control agent's report is without foundation, and is designed to foster voluntary settlements between physicians and the department of consumer protection so as to avoid the need for formal adjudicatory proceedings.

The commissioner refused to disclose all of the information sought by Barbuto. Barbuto and Jackson Newspapers filed a formal complaint with the FOIC. After a hearing, the FOIC issued a decision ordering

---

[1] The other plaintiffs are the department of consumer protection and the deputy commissioner of consumer protection.

the commissioner to provide Barbuto and Jackson Newspapers with the requested material. The commissioner appealed that decision to the Superior Court, which sustained the appeal.

On appeal to this court, the FOIC, Jackson Newspapers and Barbuto claim that the trial court erred in holding that: (1) the Freedom of Information Act (act), General Statutes § 1-19, permits the nondisclosure of records generated by compliance meetings; (2) General Statutes § 21a-306[2] is applicable to compliance meetings held pursuant to General Statutes §§ 21a-323[3] and 4-182 (c);[4] and (3) compliance meetings are not proceedings involving the question of licensure or right to practice. We find no error.

The defendants' first claim is that the trial court erred in holding that the act permits the nondisclosure of records generated by compliance meetings. We agree.

[2] General Statutes § 21a-306 provides: "Information received by the department of health services, state department of consumer protection or commission of pharmacy through filed reports, inspection or as otherwise authorized under chapters 382 and 418 and this chapter shall not be disclosed publicly in such a manner as to identify individuals or institutions, except in a proceeding involving the question of licensure or right to practice."

[3] General Statutes § 21a-323 provides: "Before denying, suspending, revoking or refusing to renew a registration, the commissioner shall afford the applicant an opportunity for hearing in accordance with the provisions of chapter 54. Notice of such hearing shall be given by certified mail. The commissioner may subpoena witnesses and require the production of records, papers and documents pertinent to such hearing."

[4] General Statutes § 4-182 (c) provides: "No revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined."

The trial court found that the act provided a basis for the exemption of the documents in question by balancing the public's right to have access to the information requested by Barbuto with the governmental need for confidentiality, relying on *Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 435 A.2d 353 (1980). The trial court found that the *Wilson* balancing test supported the exemption of the documents generated by the compliance meetings. The trial court erred in applying the balancing test to the act as a whole.

In *Maher* v. *Freedom of Information Commission*, 192 Conn. 310, 315, 472 A.2d 321 (1984), we stated that "[t]he exemptions contained in § 1-19 reflect 'a legislative intention to balance the public's right to know what its agencies are doing, with the governmental and private needs for confidentiality. . . . [I]t is this balance of the governmental needs for confidentiality with the public right to know that must govern the interpretation and application of the Freedom of Information Act. The general rule, under the act, however, is disclosure. . . . Exceptions to that rule will be narrowly construed in light of the underlying purpose of the act . . . and the burden of proving the applicability of an exemption rests upon the agency claiming it.' [*Wilson* v. *Freedom of Information Commission*, supra, 328-29]." Thus, *Maher* clarifies the fact that the *Wilson* balancing test applies to the exemptions to § 1-19, rather than to the act as a whole. See also *State* v. *Januszewski*, 182 Conn. 142, 170-71, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981).

Although there is no inherent exemption from disclosure under the act, the possibility exists that the information may fall within the state or federal law exception to § 1-19. Section 1-19 (a) provides that "[e]xcept as otherwise provided by any federal law or

state statute, all records maintained or kept on file by any public agency . . . shall be public records and every person shall have the right to inspect such records . . . ." Compliance meetings, held pursuant to General Statutes § 4-182, may therefore be exempt from the general rule of disclosure, because General Statutes § 21a-306 provides that "[i]nformation received by the . . . state department of consumer protection . . . shall not be disclosed publicly in such a manner as to identify individuals or institutions, except in a proceeding involving the question of licensure or right to practice."

This brings us to the defendants' second claim, which concerns the applicability of § 21a-306 to compliance meetings. The defendants claim that the trial court erred in applying § 21a-306 to compliance meetings held pursuant to General Statutes §§ 21a-323 and 4-182 because: (1) neither § 4-182 (c) nor § 21a-323 is found in the specific chapters mentioned in § 21a-306; and (2) the records in issue are created by the department of consumer protection rather than received by it in the form of filed reports. The plaintiffs maintain that the test for whether information is protected from disclosure under § 21a-306 depends upon the chapter under which the information was collected, rather than the chapter which provides for a proceeding involving licensure. Thus, the plaintiffs argue that chapter 420b, entitled "Dependency-Producing Drugs," is the authority from which the investigative power in § 21a-306 is derived.

Section 21a-306 further provides: *"Information received by the . . . state department of consumer protection . . . through filed reports, inspection or as otherwise authorized under chapters 382 and 418 and [chapter 420b] shall not be disclosed publicly* in such a manner as to identify individuals or institutions, except in a proceeding involving the question of licensure or right to practice." (Emphasis added.) This section

clearly refers to the inspection, record keeping and reporting provisions of those statutes. Chapter 382, pertaining to pharmacists, includes statutes authorizing the employment of inspectors; General Statutes § 20-179; and the preservation of prescription records for inspection. General Statutes § 20-184c. Chapter 418 contains similar provisions relating to food, drugs and cosmetics: investigations, inspections, records; General Statutes § 21a-116; inspection of records; General Statutes § 21a-117; and inspection of premises. General Statutes § 21a-118. Chapter 420b has similar but more restrictive requirements for dependency-producing drugs: record keeping; General Statutes §§ 21a-248, 21a-249; record requirements; General Statutes §§ 21a-254, 21a-255; and inspection of records. General Statutes §§ 21a-261, 21a-265. The plain lanquage of § 21a-306 supports the plaintiffs' interpretation of the statutes. See *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 6, 434 A.2d 293 (1980).

The FOIC asserts in its reply brief that the plaintiffs' argument is not properly before this court because it is raised for the first time in this appeal. The FOIC claims that there is no evidence in the record concerning the source of the authority under which the records sought by Barbuto were generated. We disagree because we find as a matter of law that the commissioner necessarily relied, in his investigations relating to compliance hearings, on the statutes that come within the express ambit of § 21a-306.

The FOIC argues that the commissioner had another source of authority in the subpoena power conferred by § 21a-323 relating to "Controlled Substance Registration," and contained in chapter 420c. That section does not purport, however, to grant such subpoena power except as it pertains to a formal hearing concerning possible denial, suspension, revocation or refusal to renew a controlled substance registration.

In other words, § 21a-306 is consistent with the provisions of chapter 420b in conferring subpoena power for revocation and suspension proceedings. See General Statutes § 21a-275. Section 21a-323 confers no subpeona power for compliance meetings. Other provisions in chapter 420b do confer broad investigatory authority not only for dependency-producing drugs, but also for controlled substances. See, e.g., General Statutes §§ 21a-261 and 21a-265. Thus, the investigations conducted by the commissioner in conjunction with compliance meetings necessarily were conducted under authority that brings those investigations within the shelter of § 21a-306.

Even if the plaintiffs' investigations initially fall within the nondisclosure provisions of § 21a-306, the defendants claim that they must be made public because § 21a-306 requires disclosure of information generated by "proceedings involving the question of licensure or right to practice." The defendants urge us to overturn the conclusion of the trial court that compliance hearings do not constitute such proceedings. We disagree with the defendants and hold that for the purposes of § 21a-306 compliance meetings are not "proceedings."

Under § 21a-306, public disclosure is not required until the initiation of "proceedings involving the question of licensure or right to practice." Section 21a-1-20a of the Regulations of Connecticut State Agencies[5] pro-

---

[5] Section 21a-1-20a of the Regulations of Connecticut State Agencies provides: "(a) No revocation, suspension or bonding requirement of any certificate, license or registration is lawful unless prior to the institution of agency proceeding, the agency gave notice by mail to the holder thereof of facts or conduct which warrant the intended action, and the holder thereof was given the opportunity to show compliance with all lawful requirements for the retention of the certificate, license or registration.

"(b) Notification of such compliance conference shall be certified mail. Said notice shall contain:

"(1) A statement of the time, date and place of the compliance conference;

"(2) A reference to the statute(s) or regulation(s) allegedly violated;

vides in pertinent part: "No revocation, suspension or bonding requirement of any certificate, license or registration is lawful unless *prior to the institution of agency proceeding* . . . the holder thereof was given *the opportunity to show compliance* with all lawful requirements for the retention of the certificate, license or registration." (Emphasis added.) Thus, by its terms a compliance conference is not an agency proceeding giving rise to the requirement of public disclosure.

In support of the argument that compliance meetings are proceedings, the defendants claim that although a compliance meeting is preliminary to formal revocation proceedings, it nonetheless is a "proceeding" under the statute. The defendants claim that because "proceeding" is not specifically defined in § 21a-306 or chapter 420b, the term must be construed according to the commonly approved usage of the language, citing *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 440 A.2d 767 (1981). The defendants' rendition of the law is accurate, but it is inapplicable to this case where the language of the relevant statutes and regulations clearly defines the opportunity to show compliance as an event occurring prior to the initiation of a "proceeding involving the question of licensure or right to practice." See *Johnson* v. *Manson,* 196 Conn. 309, 493 A.2d 846

"(3) A clear and concise factual statement sufficient to inform each respondent of the facts or practices alleged to be in violation of the law; and

"(4) A statement that each respondent may be represented by counsel.

"(c) Compliance conferences shall be recorded but need not be transcribed, and the rules of evidence are not applicable.

"(d) The Commissioner shall designate a person to preside at such compliance conference. After said compliance conference, said designated presiding officer shall report in writing his recommendations to the Commissioner.

"(e) Any agreement reached as a result of a Compliance Meeting shall not preclude the department from further proceeding against the alleged violator. If the latter party desires a formal ruling concerning the practice in question, he may submit to the Commissioner a request for declaratory ruling pursuant to Section 21a-1-10 of these regulations."

(1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986). The clear and unambiguous language of these statutes leaves no room for construction nor any need to resort to the common meaning of the term "proceeding," as urged by the defendants. See *State* v. *James,* 197 Conn. 358, 497 A.2d 402 (1985).

There is no error.

In this opinion the other justices concurred.