# R. E. Van Norstrand *v.* Freedom of Information Commission et al.
## (13552)

Peters, C. J., Shea, Callahan, Covello and Hull, Js.

Argued January 10—decision released May 30, 1989

*Constance L. Chambers,* assistant general counsel, with whom, on the brief, was *Mitchell W. Pearlman,* general counsel, for the appellant (named defendant).

*H. Gordon Hall,* associate attorney general, for the appellee (plaintiff).

COVELLO, J. This is an appeal from a decision of the Superior Court overruling an order of the Freedom of Information Commission (FOIC) that required disclosure of certain data concerning judges that had been collected by the plaintiff, R. E. Van Norstrand, the speaker of the House of Representatives for the 1985–1986 session. The dispositive issue is whether the trial court erred in concluding that the requested information was a preliminary draft within the meaning of General Statutes § 1-19 (b) (1) and (c) (1) and therefore exempt from disclosure.

Examination of the record discloses that on March 7, 1986, the Journal Inquirer newspaper and two of its reporters sent a letter to the plaintiff, requesting a copy of the summary of the data he had obtained as the result of a survey of members of the Connecticut Bar Association evaluating various characteristics of the judges of the Superior Court. The survey was conducted in 1985–1986 by the plaintiff in his official capacity as the presiding officer of the House of Representatives, which body has the responsibility, together with the Senate, to pass upon the governor's nominees for judicial reappointment. The plaintiff sought to obtain information about those judges scheduled for reappointment in 1986. To this end, he sent out 8300 questionnaires to the members of the Connecticut Bar Association. The qualities of the individual judges evaluated included judicial integrity, demeanor, diligence, caseflow management, familiarity with current law, soundness of written rulings and worthiness for retention. Fifteen hundred completed questionnaires were returned. The

questionnaires included evaluations of judges who were not scheduled for reappointment in 1986, as well as those of judges who were.

The data thus acquired were thereafter compiled in a numerical format for all of the judges. Those with the least favorable ratings were reviewed by the plaintiff to determine which of them were scheduled for reappointment in 1986. After this, the information concerning judges not due for reappointment was excised from the final survey results. The plaintiff testified that the only purpose in gathering information about those judges whose terms were not expiring in 1986 was to ensure general statistical reliability. The excised data were not presented to the legislature or to any legislative committee nor were they used in any way in the legislative decisionmaking process.

On March 11, 1986, the plaintiff sent a letter to the Journal Inquirer's reporter acknowledging that he had released the summary of data pertaining to judges who were being considered for reappointment in 1986, but that he refused to release the summary of data concerning the judges who were not being considered for reappointment in that year. On March 14, 1986, the Journal Inquirer and two of its staff filed a complaint with the FOIC requesting it to order the plaintiff to disclose the data concerning all of the judges. At a hearing conducted by the FOIC, the plaintiff argued that the excised portion of the summary of the data constituted a preliminary draft or note and was therefore exempt from disclosure pursuant to General Statutes §§ 1-19 (b) (1) and (c) (1).

On June 11, 1986, the FOIC concluded that the requested information was not so exempt and ordered its disclosure. In so doing, the FOIC found that "the respondent did seriously and in good faith consider the effect upon disclosure to the public . . . [but] failed

to prove that the public interest in withholding such documents clearly outweighs the public interest in disclosure." The FOIC further found that "the summary of the data pertaining to the judges is not a preliminary draft of a memorandum, prepared by a member of the staff of a public agency, which is subject to revision prior to submission to or discussion among the members of a public agency and therefore, it is not exempt under § 1-19 (c) (1)."

On June 26, 1986, the plaintiff appealed this decision to the Superior Court. That court concluded that the requested information was indeed a preliminary draft or note and ruled that disclosure was therefore not required. The FOIC in turn appealed that decision to the Appellate Court. We thereafter transferred the matter to ourselves pursuant to Practice Book § 4023.

I

EXEMPTION UNDER GENERAL STATUTES § 1-19 (b) (1)

General Statutes § 1-19 (a) sets out the broad public right to inspect or copy agency records.[1] General Statutes § 1-19 (b) (1) exempts from the otherwise required disclosure "preliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure." As a threshold consideration, therefore, we must determine whether the requested material constituted "preliminary drafts or notes" within the meaning of General Statutes § 1-19 (b) (1). In so doing, the words must be construed

---

[1] General Statutes § 1-19 (a) provides in relevant part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records . . . ."

according to their commonly approved usage. General Statutes § 1-1 (a).[2]

"Preliminary" is defined as "something that precedes or is introductory or preparatory." As an adjective it describes something that is "preceding the main discourse or business." A "draft" is defined as "a *preliminary* outline of a plan, document or drawing . . . ." (Emphasis added.) American Heritage Dictionary of the English Language. By using the nearly synonymous words "preliminary" and "draft," the legislation makes it very evident that preparatory materials are not required to be disclosed. The compilation of raw data here in issue was a preliminary document and therefore a draft because it contained data not required or germane to the eventual purpose for which the survey was undertaken and it was thereafter modified to excise the material that was irrelevant to its legislative purpose.

The FOIC's argument that those data were neither "preliminary" nor a "draft" simply overlooks: (1) the common usage of the pivotal words contained in the exemption statute; (2) the fact that the data concerning judges not scheduled for reappointment were obtained solely to establish the statistical validity of the survey; and (3) the fact that the requested information was thereafter excised as irrelevant from the summary before it was circulated or used in the deliberative process. Had the purpose of the survey been to compile data with respect to all judges in the state which would thereafter be used in connection with their respective reappointments, whenever they might be, then the FOIC would be correct in asserting that the survey was not a *draft* document but rather a *completed* document. This, however, is not the factual circumstance that confronts us.

---

[2] General Statutes § 1-1 (a) provides in relevant part: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ."

With respect to the precise language of General Statutes § 1-19 (b) (1) here in issue, we have earlier stated that "preliminary drafts or notes reflect that aspect of the agency's function that precedes formal and informed decisionmaking. We believe that the legislature sought to protect the free and candid exchange of ideas, the uninhibited proposition and criticism of options that often precedes, and usually improves the quality of, governmental decisions. It is records of this preliminary, deliberative and predecisional process that we conclude the exemption was meant to encompass." *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 332–33, 435 A.2d 353 (1980). The survey results concerning the judges who were not scheduled for reappointment constitute records falling within the predecisional process to which we referred in our earlier holding.

The fact that this data constituted "preliminary drafts" within the meaning of General Statutes § 1-19 (b) (1) does not resolve the issue, however, as the statute further requires that the "public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure." In this connection, the FOIC found that "while the respondent did seriously and in good faith consider the effect upon disclosure to the public, the respondent failed to prove that the public interest in withholding such documents clearly outweighs the public interest in disclosure." Such a statement misperceives what is required in order to qualify for the exemption.

Van Norstrand testified before the FOIC that the requested information concerned judges who would not be considered for reappointment for two to six years. He further testified that the survey results here in issue would not be used in making that determination. He posited that within two to six years, the information

would be stale and to use it in the future reappointment process would be unfair to those judges. He also noted that the information being sought was not germane to any considerations then pending before the legislature. He further testified that releasing the information would affect the performance of sitting judges who received a low rating. He also testified that this release would affect assignment patterns by the judicial department and encourage "judge shopping." In light of all of these considerations, Van Norstrand concluded that the public interest in withholding the information clearly outweighed the public interest in disclosing it.

The FOIC's conclusion that "the respondent failed to prove that the public interest in withholding such documents clearly outweighs the public interest in disclosure" demonstrates that the FOIC made an independent determination concerning what was in the public interest based upon Van Norstrand's testimony. This it cannot do. General Statutes § 1-19 (b) (1) specifically provides that preliminary drafts or notes are exempt from disclosure "provided the *public agency* [here Van Norstrand as speaker of the House of Representatives] *has determined* that the public interest in withholding such documents clearly outweighs the public interest in disclosure." (Emphasis added.)

"Although the statute places the responsibility for making that determination on the public agency involved, the statute's language strongly suggests that the agency may not abuse its discretion in making the decision to withhold disclosure. The agency must, therefore, indicate the reasons for its determination to withhold disclosure and those reasons must not be frivolous or patently unfounded." *Wilson* v. *Freedom of Information Commission,* supra, 339. Here, Van Norstrand set out for the FOIC the various reasons that he considered in complying with the "public interest" aspect

of the statute. Thereafter, the FOIC specifically concluded that "the respondent did seriously and in good faith consider the effect upon disclosure to the public." Having concluded that there had been a good faith consideration of the effect upon disclosure, and not having found an abuse of discretion, the FOIC had determined all that was required of it by statute to qualify the requested information for the exemption in issue, it having been earlier found that the material constituted a "preliminary draft or note."

## II

### EXEMPTION UNDER GENERAL STATUTES § 1-19 (c) (1)

A conclusion that the requested information is not subject to disclosure under General Statutes § 1-19 (b) (1) does not mark the end of the required analysis, however, as the legislature supplemented the exemption statute in 1981 through its enactment of General Statutes § 1-19 (c) (1).[3] This statute provides

---

[3] Examination of its legislative history discloses that the enactment of General Statutes § 1-19 (c) (1) was motivated in part by *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 339, 435 A.2d 353 (1980). In the course of introducing the bill that became Public Acts 1981, No. 81-431, now General Statutes § 1-19 (c) (1), its Senate proponent, Senator Wayne A. Baker, stated: "Mr. President, it was just six years ago that we enacted what is nationally recognized as a model Freedom of Information Act. The Act creates broad rights of public access to the records of meetings of all public agencies. It also contains a limited number of exceptions to the general rule of disclosure and openness. All of this is consistent with the Freedom of Information laws intent that the people have the fundamental right to know in a timely fashion not only what governmental decisions are but what considerations go into those decisions. Unfortunately, our Supreme Court has said in the case of *Wilson* v. *Freedom of Information Commission* that the Connecticut Act should be interpreted as having the same meaning as the federal act even where their language and legislative policy are dissimilar. Mr. President, this bill basically reaffirms and clarifies the original intent and purpose in light of that case. It makes clear, hopefully once and for all, that the *deliberative* process of government agencies shall be open to the public except where the legislature alone determines a superior public interest in confidentiality." (Emphasis added.) 24 S. Proc., Pt. 17, 1981 Sess., pp. 5422–23. Senator Baker went on to say

in part that "[n]otwithstanding the provisions of subdivision (1) of subsection (b) of this section, [i.e., General Statutes § 1-19 (b) (1)], disclosure shall be required of (1) interagency or intra-agency memoranda or letters, advisory opinions, recommendations or any report comprising part of the process by which governmental decisions and policies are formulated, *except disclosure shall not be required* of a preliminary draft of a memorandum, prepared by a member of the staff of a public agency, which is subject to revision prior to submission to or discussion among the members of such agency." (Emphasis added.)

In analyzing this statute, we must again construe the words used according to their commonly approved usage. General Statutes § 1-1 (a). While the language initially removes many kinds of material from the exempt status, this additional requirement for disclosure is immediately qualified in two important respects. First, the material to be disclosed must "[comprise] part of the process by which governmental decisions and policies are formulated." Second, disclosure "shall not be required of a preliminary draft of a memorandum, prepared by a member of the staff of a public agency, *which is subject to revision prior to submission to or discussion among the members of such agency.*" (Emphasis added.)

---

that "I don't think that what we are requiring here is that all facts, that every piece of information that they have gleaned in determining or rather dealing with a problem has to be disclosed, but when they are coming to the final deliberative process, making a decision, I think that that has to be disclosed." 24 S. Proc., Pt. 17, 1981 Sess., p. 5426.

Despite the proponent's implication that *Wilson* had in some manner narrowed the broad disclosure policies set forth in General Statutes § 1-19 (a), we are still required to construe the new enactment on the basis of what the statute says. "A primary rule of statutory construction is that if the language of the statute is clear, it is presumed that the words express the intent of the legislature. . . . The court must interpret the statute as written . . . ." *Ganim* v. *Roberts,* 204 Conn. 760, 763, 529 A.2d 194 (1987).

Even if the survey data had crossed the initial threshold for disclosure under § 1-19 (c) (1), the data falls squarely within the specific exemption set out in the statute, i.e., "a preliminary draft of a memorandum, prepared by a member of the staff of a public agency which is subject to revision prior to submission to or discussion among the members of such agency." We have already discussed the plain meaning of "preliminary draft." Further, no one has argued that Van Norstrand, as speaker of the House of Representatives, was not "a member of the staff of a public agency." Finally, the survey data as collected were clearly "subject to revision" in that the data concerning judges not to be reappointed were excised by Van Norstrand "prior to submission to or discussion among the members of such agency [i.e., the legislature]." On the basis of the foregoing, we conclude that this material is not subject to disclosure under § 1-19 (c) (1).

There is no error.

In this opinion SHEA, CALLAHAN and HULL, Js., concurred.

PETERS, C. J., dissenting in part. Although I agree with the majority opinion's analysis of General Statutes § 1-19 (c) (1), I am unpersuaded that the original unexpurgated survey of the judges, which the plaintiff, R.E. Van Norstrand, commissioned in his role as member and speaker of the House of Representatives, qualifies for an exemption under General Statutes § 1-19 (b) (1). Since eligibility for that exemption is essential to upholding the plaintiff's position, I respectfully dissent from the judgment of the court.

The plaintiff maintains, and the majority opinion concludes, that his survey of judges was not subject to public disclosure under the Freedom of Information Act (FOIA); General Statutes §§ 1-15, 1-18a, 1-19 through

1-19b, 1-21, 1-21a and 1-21c through 1-21k; because it qualified for the exemption contained in § 1-19 (b) (1) for "preliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure." In construing this exemption, we do not write on a clean slate. The overarching policy of the FOIA favors disclosure of public records. To implement this policy, exceptions to the rule of public disclosure are to be narrowly construed, and the agency claiming an exemption bears the burden of proving its applicability. *Commissioner of Consumer Protection* v. *Freedom of Information Commission,* 207 Conn. 698, 701, 542 A.2d 321 (1988); *Hartford* v. *Freedom of Information Commission,* 201 Conn. 421, 431, 518 A.2d 49 (1986); *Maher* v. *Freedom of Information Commission,* 192 Conn. 310, 315, 472 A.2d 321 (1984); *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 328–29, 435 A.2d 353 (1980).

In my view, the majority opinion misconstrues, in two respects, the exemption contained in § 1-19 (b) (1). First, the exemption requires the plaintiff to demonstrate not only that the document in question was preliminary to a subsequent document, but also that the document falls within the class of documents that can reasonably be characterized as being "drafts" or "notes." Second, the exemption requires the plaintiff to show that he has undertaken an objective rather than a subjective balancing process to determine that the public interest is clearly served by nondisclosure of the document in question.

The majority opinion reads the statutory phrase "preliminary drafts" as a unitary requirement, rather than as a duality, requiring a showing that the document is both "preliminary" and a "draft." Such a construction is, I believe, unwarranted. Facially, § 1-19 (b) (1) refers to "drafts," "notes" and "documents." We should not

presume that the legislature intended to make equivalents out of these independent reference points. "In examining . . . statutory requirements . . . we must consider the statutory scheme as a whole, giving meaning to every section, and assuming no word or phrase to be superfluous." *Berger* v. *Tonken,* 192 Conn. 581, 589, 473 A.2d 782 (1984); see *State* v. *Parmalee,* 197 Conn. 158, 162, 496 A.2d 186 (1985); *State* v. *Freedom of Information Commission,* 184 Conn. 102, 107, 441 A.2d 53 (1981); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 14, 434 A.2d 293 (1980). Indeed, the use of the final phrase "such documents" implies that only documents that are "drafts" or "notes" qualify for the § 1-19 (b) (1) exemption. I am unpersuaded that a completed poll, even one designed solely to validate the legitimacy of data contained in a part thereof, can reasonably be characterized as a "draft." I am also unpersuaded that *Wilson* v. *Freedom of Information Commission,* supra, compels a different result. As the commission notes, the legislative history surrounding the subsequent enactment of § 1-19 (c) (1) signals the legislature's disavowal of *Wilson's* expansive construction of "preliminary drafts or notes" as encompassing generally "that aspect of the agency's function that precedes formal and informed decisionmaking."[1] *Wilson* v. *Freedom of Information Commission,* supra, 332–33.

Even if the unexpurgated poll were properly characterized as a "preliminary draft," such a characterization, as the majority opinion recognizes, does not per se justify withholding of the document from the public. Under § 1-19 (b) (1), public disclosure of the origi-

---

[1] For relevant commentary by the sponsors of Public Acts 1981, No. 81-431, which was later codified as General Statutes § 1-19 (c) (1), see the remarks of Senator Wayne A. Baker, 24 S. Proc., Pt. 17, 1981 Sess., pp. 5419–21, and of Representative Joseph Walkovich, 24 H. R. Proc., Pt. 23, 1981 Sess., pp. 7687–88.

nal document is still required unless "the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure." I agree that this provision locates the authority to undertake the statutory balancing test in the public agency, in this case the plaintiff, rather than in the commission. Nonetheless, it seems to me inconsistent with the policy of the act, and the limited place it assigns to exemptions, to permit the public agency to validate the balancing process in accordance with a standard of good faith, rather than in accordance with a more objective cost-benefit analysis. The importation of a good faith standard would give to a public agency a breadth of discretion that is difficult to reconcile with the agency's burden of establishing its entitlement to a § 1-19 (b) (1) exemption. Concomitantly, such a standard would severely limit the commission's capacity to review the legitimacy of an agency's exercise of its balancing authority. The legislature has nowhere indicated that, in this one instance, it intended to deprive the commission of its primary role as FOIA factfinder. *New Haven* v. *Freedom of Information Commission,* 205 Conn. 767, 775–76, 535 A.2d 1297 (1988); *Hartford* v. *Freedom of Information Commission,* supra, 434–35. The record in this case, however, persuades me that the plaintiff made an objectively valid determination not to release the unexpurgated judges' poll, and I therefore concur in the majority opinion's judgment that the plaintiff satisfied his burden of proof on this issue.

For the reasons stated above, I respectfully dissent.