Plaintiff Board of Trustees for Community-Technical Colleges (hereinafter "Board") appeals, pursuant to General Statutes Secs. 1-21 (d) and 4-183, from the decision of the defendant Freedom of Information Commission (hereinafter "FOIC") ordering it to disclose certain information upon the request of the defendant complainant Joseph Campbell, an employee of Greater Hartford Community College (hereinafter "GHCC"). GHCC is one of 17 constituent colleges administered by the Board pursuant to General Statutes Sec. 10a-71 et seq. The Board is a public agency of this State within the meaning of General Statutes Sec. 1-18a(a), and is a party aggrieved for purposes of this appeal. Board of Pardons v. Freedom of Information Commission, 210 Conn. 646 (1989).
The matter had its genesis in the State's fiscal crisis which surfaced in early 1991. As part of its budget process, the Executive Branch contemplated significant reductions in the State employee workforce absent union financial concessions. In accordance with a directive from the Governor, the Office of Policy and Management (hereinafter "OPM"), in a March 12, 1991 memorandum to all agency heads, directed each agency to prepare an employee reduction action plan. Three plans were initially requested, each successively more severe in reduction impact, respectively referenced as Options A, B and C.
In compliance with this directive, the Executive Director of the Board under date of March 27, 1991 submitted to OPM an 11-page Employee Reduction Plan (hereinafter "reduction plan"), which plan on its face states that it is subject to modification as additional data submitted by the constituent colleges was received and reviewed. A copy of this preliminary reduction plan was provided by plaintiff at the FOIC hearing and appears in the Record. This document does not contain the names of the particular individuals or positions of persons who would be subject to layoff.
In conjunction with that reduction plan, each constituent college president was requested to submit to the Board's Executive Director for review and revision a recommendation for layoffs or CT Page 5437 savings pertaining to that particular college. The matter was complicated by provisions in relevant collective bargaining agreements concerning layoff procedures and criteria therefor. In addition, the complainant's bargaining unit was contractually required to be noticed 30 days in advance of notice to the affected employees.
A two-part review of these recommendations was structured at the Executive Director level. The first stage involved reconciliation of the combined recommendations with the fiscal requirements imposed by OPM. The second stage was to assure conformity with the relevant collective bargaining agreements.
The President of GHCC submitted such a preliminary GHCC layoff list (hereinafter "layoff list") identifying affected employees or positions, and met twice with pertinent Board staff for review and revision of the same. Prior to completion of this review process, the matter became moot as the result of an agreement reached in April 1991 between the Governor and the State employee unions. No further action was thereafter taken respecting the reduction plan or the preliminary GHCC layoff list.
The complainant Joseph Campbell, first by letter dated April 18, 1991 and twice in writing thereafter, requested to be informed by GHCC whether his name was included on the GHCC layoff list. Upon the failure of GHCC to comply, he appealed to the FOIC. Although the complainant made clear at the FOIC hearing (and at the hearing before this Court) that he had no interest in disclosure of any names other than his own, the FOIC construed his request to include disclosure of the entire layoff list, and so ordered. The issues on this appeal have therefore been framed and considered on the context of the FOIC's interpretation of the complaint and its consequent order.
This appeal is governed by the Uniform Administrative Procedure Act, General Statutes Sec. 4-166 et seq. The scope of review is limited by Sec. 4-183 (j). The court may not substitute its judgment for that of the agency (here the FOIC) as to the weight of the evidence on questions of fact. However, the court may reverse or modify a decision if it finds that the decision is: "(1) In violation of constitutional or statutory provisions; . . . (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
"Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." Ottachian v. Freedom CT Page 5438 of Information Commission, 221 Conn. 397 (1992). However, "[t]he interpretation of statutes presents a question of law . . . it is for the courts, and not for administrative agencies, to expound and apply governing principles of law." Connecticut Humane Society v. Freedom of Information Commission, 218 Conn. 757,761-62 (1991).
The Freedom of Information Act is set forth in General Statutes Sec. 1-7 et seq. Pursuant to Sec. 1-19 (a), except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency are "public records" subject to disclosure.
A state agency "is bound, by General Statutes Sec. 1-19, to maintain its records as public records available for public inspection unless these records fall within one of the statutory exemptions to disclosure." Maher v. Freedom of Information Commission, 192 Conn. 310, 314-15 (1984). The "general rule is disclosure and . . . exceptions will be narrowly construed." Rose v. Freedom of Information Commission, 221 Conn. 217, 233
(1992). The burden of proving the applicability of an exception to such disclosure rests upon the agency claiming it. Wilson v. Freedom of Information Commission, 181 Conn. 324, 328-29 (1980).
Although the facts material to this appeal are essentially not in dispute, the conclusions reached therefrom by the FOIC are very much so. At the outset, the court notes that nothing in the Record indicates that the FOIC in fact reviewed the subject layoff list. However, the Record does indicate, consistent with the posture of the parties on this appeal, that the testimony as to its content was sufficient "to present the commission with an informed factual basis for its decision in review under the act." Wilson v. Freedom of Information Commission, supra, 341.
Plaintiff first asserts that the subject layoff list is not a public record by virtue of General Statutes Sec. 10a-154a, which provides that records of performance and evaluation of a faculty or professional staff member shall not be deemed a public record, and therefore are not subject to disclosure under General Statutes Sec. 1-19 (a). In support of this assertion, plaintiff refers to evidence that evaluation of job performance in fact was a criterion for inclusion on the layoff list.
The FOIC found that plaintiff failed to prove that the subject layoff list is a "record of performance or evaluation," and accordingly concluded that the layoff list is a public record within the meaning of General Statutes Sec. 1-18a. The Court concurs. While a review of the Record indicates that evaluation of job performance may have been one of several equally weighted criteria respecting layoffs of unclassified employees under at least one CT Page 5439 pertinent union contract, the evidence is insufficient, under the restraints imposed by Sec. 4-183 (j), to justify reversal of the FOIC finding and conclusion on this issue.
Ironically, had the FOIC found that the layoff list, insofar as it may have applied to the complainant, qualified as either a record of performance or evaluation or as part of or incident to the complainant's personnel file, it could properly have complied with his specific request by ordering disclosure as to his name only under either General Statutes Secs. 10-154a or 1-19b(a)(2), as the case may be.
Plaintiff's dispositive claim is that the subject layoff list is exempt from disclosure under General Statutes Sec. 1-19 (b)(1), as limited by Sec. 1-19 (c)(1). The Court concurs.
Section 1-19 (b)(1) exempts from disclosure "preliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure." Entitlement to this exemption is further limited by Sec. 1-19 (c)(1), discussed hereinbelow.
The FOIC merely concluded without any explanation or elaboration concerning material issues or evidence, that plaintiff failed to prove its entitlement to this exemption. However, as eligibility for this exemption involves statutory interpretation, the relevant issues present questions of law for determination by the court. Connecticut Humane Society v. Freedom of Information Commission, supra. The court may review the Record to determine whether the FOIC has correctly applied the law to the evidence before it. Williams v. Liquor Control Commission,175 Conn. 409, 413-14 (1978).
The legal principles incident to this exemption have been enunciated in Wilson v. Freedom of Information Commission,181 Conn. 324 (1980) and Van Norstrand v. Freedom of Information Commission, 211 Conn. 339 (1989) (hereinafter respectively referred to as Wilson and Van Norstrand.)
EXEMPTION UNDER SEC. 1-19 (b)(1)
Exemption under Sec. 1-19 (b)(1) entails a two-pronged analysis. First, it must be determined whether the subject document qualifies as a "preliminary draft or note." If so, the second prong involves the determination by the public agency, here the plaintiff Board, "that the public interest in withholding such document clearly outweighs the public interest in disclosure." These prongs will be reviewed herein ad seriatim.
Preliminary Drafts or Notes CT Page 5440
This statutory requirement was first interpreted by our
Supreme Court in Wilson, supra, at 184 Conn. 332-33 as follows:
 [T]he term "preliminary drafts or notes" relates to advisory opinions, recommendations and deliberations comprising part of the process by which governmental decisions and policies are formulated . . . . Such notes are predecisional. They do not require particular conduct or forebearance on the part of the public. Instead, preliminary drafts reflect that aspect of the agency's function that precedes formal and informed decision making.
A document may be a "preliminary draft" even though considered "final" by the generating author so long as it is predecisional as regards the ultimate decision making authority. Id., at181 Conn. 331.
The FOIC specifically found the subject layoff list to be "preliminary" (Finding #8), but disputes that the list is a "draft". This issue was disposed of in Van Norstrand, supra, which defined the words "preliminary" and "draft" to be "nearly synonymous". Id., at 211 Conn. 343. As noted by the dissent (Peters, J.) in that case, the majority interpreted the statutory phrase "preliminary drafts" as imposing a unitary requirement rather than a duality. Id., at211 Conn. 349. Accordingly, if the document is "preliminary", it most likely is a "draft".
The memoranda held in Wilson to be preliminary drafts were committee reports and recommendations, apparently complete and final as regards the authoring committee. That in Van Norstrand was a completed survey. Both were predecisional as regards the ultimate decision-making authority.
The undisputed evidence in this appeal clearly establishes that the subject layoff list was both preparatory and predecisional as regards the plaintiff Board and preparatory and subject to further alteration by its author, the GHCC President. Even under the duality interpretation of the Van Norstrand dissent, this layoff list is a "preliminary draft" within the meaning of Sec. 1-19 (b)(1). The FOIC conclusion on this issue is both affected by error of law and clearly erroneous in view of the reliable, probative and substantial evidence.
Public Interest in Disclosure
The FOIC's conclusion that the plaintiff Board failed to prove that the public interest in disclosure is clearly outweighed by the public interest in withholding the document (Finding 6) is likewise CT Page 5441 erroneous as a matter of law and evidence, and is an abuse of discretion. The FOIC in effect substituted its judgment for that of the Board. This it cannot do. Van Norstrand, supra, 345.
By statute, the responsibility for making the requisite public interest determination is vested in the agency (here the plaintiff Board), not the FOIC. The Board's determination to withhold must stand so long as it has not abused its discretion and its reasons for withholding are not "frivolous or patently unfounded." Van Norstrand, supra, 345, quoting Wilson, supra, 339. The FOIC made no such finding, nor could it.
The Record establishes the Board's reasons for withholding as including the potential negative perception implied by inclusion on the layoff list, consequent embarrassment to the affected employees and their reputations, job security apprehension reflecting adversely upon job performance, adverse impact upon the student body respecting participation or enrollment in jeopardized classes and programs, and adverse impact upon college morale in general. These reasons are substantially similar to those held to be sufficient in Wilson, supra, 339.
The FOIC again urges the Court to follow the Van Norstrand dissent, id., at 211 Conn. 351, by requiring the Board to validate its public interest balancing process determination in accordance with a more objective cost-benefit analysis rather than under a subjective good faith standard. Application of an objective standard implies an issue of law for determination by the Court. Even under this more strict objective standard analysis, the Court concludes that the Board's reasons are sufficient. The potential for embarrassment is a significant factor in determination of the analogous exemption under Sec. 1-19 (b)(2), Chairman v. Freedom of Information Commission, 217 Conn. 193, 198 (1991), and is similarly valid here in conjunction with the Boards other reasons for nondisclosure.
Accordingly, the requirements for exemption under Sec. 1-19
(b)(1) have been met.
EXEMPTION UNDER SEC. 1-19 (c)(1)
Compliance with Sec. 1-19 (b)(1) alone does not satisfy the exemption. Sec. 1-19 (c) provides that notwithstanding such compliance,
 disclosure shall be required of (1) interagency or intra-agency memoranda or letters, advisory opinions, recommendations or any report comprising part of the process by which governmental decisions are formulated, except disclosure shall not be required of a preliminary draft of a memorandum, prepared by a member of the staff of a public agency, which is CT Page 5442 subject to revision prior to submission to or discussion among the members of such agency . . . [emphasis added].
The legislative history of this section, whose enactment was motivated in part by the decision in Wilson, is discussed in Van Norstrand, supra, 346 fn. 3.
Webster's Ninth New Collegiate Dictionary (1989) defines "memorandum" as including "a communication that contains directive, advisory or informative matter." The layoff list certainly contains directive, advisory or informative matter. The parties concede that the subject layoff list is a qualifying "memorandum." The remaining issue is whether the above-emphasized exception to disclosure applies.
The FOIC concluded that the plaintiff Board failed its burden of proof on this issue (Finding #17). The essential underpinning for this conclusion, upon which it must rise or fall, is the FOIC's finding that the "preliminary layoff list" was "reviewed by the Executive Director and Board of Trustees of Greater Hartford Community College" (Finding #8). The conclusion and finding are clearly erroneous.
The statute specifically distinguishes between "a member of the staff of a public agency" and "the members of such agency." The Board of Trustees of GHCC is the plaintiff Board, whose "members" are persons appointed as such pursuant to General Statutes Sec. 10a-71. The Court has carefully reviewed the Record and can find no evidence whatsoever that the subject layoff list was reviewed by the members of the plaintiff Board.
The identity of the persons encompassed within the finding who purportedly reviewed the subject layoff list is set out on page 12 of the FOIC Brief. All such persons are members of the Board staff, not members of the Board. The additional requirements under Sec. 1-19 (c)(1) for exemption as a matter of law and fact have been met.
The Court finds that the plaintiff Board is prejudiced by the FOIC decision, in that the decision is in violation of statutory provisions, is affected by other errors of law, is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, and is an abuse of discretion. General Statutes Sec.4-183 (j).
By reason of this ruling, it is unnecessary to consider plaintiff's additional claim of exemption under Sec. 1-19 (b)(9) concerning "records, reports and statements of strategy or negotiations with respect to collective bargaining." CT Page 5443
The appeal is sustained.