[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative appeal from a final decision of the defendant, Freedom of Information Commission ("the commission"), brought pursuant to General Statutes §§ 1-206 (d) (formerly § 1-2 li) and 4-183. The plaintiff, Director of the Retirement and Services Division, State of Connecticut, Office of the Comptroller, seeks to reverse the final decision of the commission ordering disclosure under the Freedom of Information Act ("FOIA") of a document in the possession of the plaintiff. The court finds the issues in favor of the plaintiff.
This appeal arises from a request made on May 29, 1997 by Lois Brodeur, a union steward, for a copy of a memorandum dated in March 1997 regarding an upgrade for an employee, Gary Russell, represented by Brodeur in a grievance proceeding concerning Russell's job classification. The memorandum sought by Brodeur was prepared by Steven Weinberger, the director of the retirement and benefits services division of the office of the state comptroller at the request of Mark Ojakian, the deputy state comptroller. Ojakian, in February or March of 1997, requested seven division directors in the state comptroller's office, including Weinberger, to prepare memoranda describing the impact a proposed early retirement plan pending in the state legislature would have on the personnel within their divisions as well as possible division restructuring. The memorandum prepared by Weinberger presented a "macro-view" of staffing levels in the retirement and benefit services division, as it existed and as it might exist if the proposed legislation was enacted. Specifically, Weinberger's memorandum addressed possible reductions in the workforce due to early retirement or termination as well as possible upgrades of employees. It was Brodeur's contention that the Weinberger memorandum recommended CT Page 6988 Russell for a possible upgrade in his job classification.
On June 4, 1997, Brodeur's request was denied by the plaintiff. On June 10, 1997, Brodeur filed a complaint with the commission alleging that the plaintiff violated FOIA by failing to provide her with the requested document. On October 8, 1997, the matter was heard as a contested case before hearing officer Clifton A. Leonhardt. On December 18, 1997, the commission issued a proposed decision, which was considered and adopted by the commission on January 28, 1998.
The commission concluded that the plaintiff was subject to the disclosure requirements of the Freedom of Information Act. Specifically, the commission concluded that the requested memorandum was not a "preliminary draft or note" under General Statutes § 1-210 (b)(1) (formerly § 1-19 (b)(1)); and, therefore was not exempt from disclosure. Consequently, the commission concluded that, by failing to provide copies of the requested record, the plaintiff violated General Statutes §§1-212 (a) (formerly § 1-15 (a)) and 1-210 (a) (formerly §1-19 (a)). Accordingly, the commission order the plaintiff to disclosed the requested document and this administrative appeal ensued.
The plaintiff timely filed this appeal on March 16, 1998. The record was filed on June 26, 1998. Briefs were filed on October 23, 1998 by the plaintiff and on December 3, 1998 by the defendant. A reply brief was, filed by the plaintiff on December 22, 1998. The parties agreed to waive oral argument and have the court decide the matter based on the parties' briefs and the administrative record.
Since the decision of the commission requires the plaintiff to provide a copy of the memorandum prepared by Steven Weinberger regarding a possible upgrading for Russell, the court finds that the plaintiff is aggrieved within the meaning of General Statutes § 4-183. See New England Rehabilitation Hospital of Hartford.Inc.v. CHHC, 226 Conn. 105, 120 (1993).
The parties agree that the dispositive issue in this administrative appeal is whether the requested memorandum is exempt from disclosure pursuant to General Statutes §§ 1-210
(b)(1)[1] and 1-210 (c)(1)[2] (formerly §§ 1-19 (b)(1) and 1 19(c)(1), respectively) as a "preliminary draft or note". CT Page 6989
In any FOIC proceeding, "[t]he burden of establishing the applicability of an exception rests upon the party claiming it (Citations omitted.) Furham v. Freedom of Information Commission,243 Conn. 427, 432 (1997). Added to this burden is the "overarching policy underlying the Freedom of Information Act (FOIA) favoring the disclosure of public records. . . . Our construction of the FOIA must be guided by the policy favoring disclosure, and exceptions to disclosure must be narrowly construed. . . ." (Citations omitted; internal quotation marks omitted.) Superintendent of Police v. Freedom of InformationCommission, 222 Conn. 621, 626 (1992); see also Furham v. Freedomof Information Commission, supra 432.
The Uniform Administrative Procedure Act ("UAPA") further delineates the standard of review for appeals from decisions of the FOIC. Dolgner v. Alander, 237 Conn. 272, 280 (1996). "The scope of permissible review is governed by § 4-183 (j)[3]
and is very restricted. See Cos Cob Volunteer Fire Co. No. 1,Inc. v. Freedom of Information Commission, 212 Conn. 100, 104,561 A.2d 429 (1989); New Haven v. Freedom of InformationCommission, 205 Conn. 767, 774, 535 A.2d 1297 (1988). . . . [T]he trial court may not retry the case or substitute its own judgment for that of the defendant. C H Enterprises, Inc. v.Commissioner of Motor Vehicles, 176 Conn. 11, 12, 404 A.2d 864
(1978); DiBenedetto v. Commissioner of Motor Vehicles,168 Conn. 587, 589, 362 A.2d 840 (1975); see General Statutes §4-183 (g). New Haven v. Freedom of InformationCommission, supra, 773. The conclusion reached by the defendant must be upheld if it is legally supported by the evidence. . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the commissioner, we cannot disturb the conclusion reached by him.Hart Twin Volvo Corporation v. Commissioner of Motor Vehicles,165 Conn. 42, 49, 327 A.2d 588. See Paul Bailey's Inc. v.Kozlowski, 167 Conn. 493, 496-97, 356 A.2d 114 (1975). Lawrencev. Kozlowski, 171 Conn. 705, 708, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2930, 53 L.Ed.2d 1066 (1977). Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its orders, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. Dolgner v.Alander, supra, 237 Conn. 280-8 1." (Internal quotation marks omitted.) Domestic Violence Services of Greater New Haven. Inc.v. FOIC, 47 Conn. App. 466, 469-70 (1998). CT Page 6990
"The interpretation of statutes presents a question of law. . . . Although the factual and discretionary determinations of administrative agencies are to be given considerable weight by the courts., it is for the courts, and not for administrative agencies, to expound and apply governing principles of law. . . ." Domestic Violence Services of Greater New Haven. Inc.v. FOIC, supra, 47 Conn. App. 470-71. Because the commission's determination of whether the requested memorandum is a preliminary draft or note required an interpretation of §1-210 (b)(1) and 1-210 (c)(1), that determination was a matter of law.
The plaintiff first claims that the commission improperly determined that the document did not constitute a "preliminary note or draft" under § 1 210(b)(1). This court agrees.
General Statutes 1-2 10(b)(1) provides as follows:
 (b) Nothing in the Freedom of Information Act shall be construed to require disclosure of: (1) Preliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure. General Statutes 1-2 1O(b)(1)
The terms "preliminary notes or drafts" are not defined in the Freedom of Information Statutes. However, our Supreme Court has on three occasions interpreted the phrase "preliminary notes or drafts" within the meaning of § 1 210(b)(1). See Shew v.Freedom of Information Commission, 245 Conn. 149 (1998); VanNorstrand v. Freedom of Information Commission, 211 Conn. 339
(1989); Wilson v. Freedom of Information Commission,181 Conn. 324 (1980).
 We previously have interpreted the phrase "preliminary notes or drafts" within the meaning of § 1-19 (b)(1). Van Norstrand v. Freedom of Information Commission, 211 Conn. 339, 342-44, 559 A.2d 200 (1989); Wilson v. Freedom of Information Commission, 181 Conn. 324, 33 1-33, 435 A.2d 353
(1980). Examining, first, the common meaning of the words contained in this phrase, we observe that "preliminary" is defined as something that precedes or is introductory or preparatory. As an adjective it describes something that is preceding the main discourse or business. A "draft" is CT Page 6991 defined as a preliminary outline of a plan, document or drawing. . . . American Heritage Dictionary of the English Language. By using the nearly synonymous words "preliminary" and "draft," the legislation makes it very evident that preparatory materials are not required to be disclosed. (Emphasis omitted.) Van Norstrand v. Freedom of Information Commission, supra, 343. Furthermore, the concept of preliminary, as opposed to final should [not] depend upon., whether the actual documents are subject to further alteration. Wilson v. Freedom of Information Commission, supra, 332. Preliminary drafts or notes reflect that aspect of the agency's function that precedes formal and informed decision making. . . . It is records of this preliminary, deliberative and predecisional process that we conclude the exemption was meant to encompass. Id., 332-33.
(Internal quotation marks omitted.) Shew v. Freedom ofInformation Commission, supra. 245 Conn. 164.
With regard to the claim that the Weinberger memorandum submitted to the deputy comptroller was a "preliminary draft" within the meaning of the provision cited above, the commission found as follows:
 8. It is found that the requested record was a completed memorandum drafted and initially sent by the respondent to the Deputy State Comptroller during February 1997. It was a completed but preliminary record, in the sense that it was edited into completed and finalized form, but at the same time, it as a planning document at a preliminary stage of a decision-making process in a public agency. It was written to help evaluate what a division's staffing needs would be, along with possible options, in the event that a proposed early retirement plan was implemented at a later time.
 9. It is found that, four or five months later in June or July 1997, after the early retirement plan was in fact implemented, the respondent sent the Deputy State Comptroller a second, similar but revised memorandum, which, unlike the requested record, included recommendations that were ripe for actual implementation ("the second memorandum").
 10. It is found that the requested record and the second memorandum were separate documents because of the interval of time between February 1997 and June or July 1997, and also CT Page 6992 because the documents served different though related purposes. The requested record was written to provide commendable longerterm, preliminary planning, while the second memorandum was designed to facilitate operations decisions.
 11. It is, therefore, found that this case poses the following legal issue: when a record, such as the requested record, is complete and finalized but contains subject mater that is subject to revision in a later record, such as the second memorandum, is the requested record a "preliminary draft or note" exempt from mandatory disclosure pursuant to §§ 1-19 (b)(1) and 1-19 (c)(1), G.S.
 14. It is therefore concluded that the requested record, which has been edited into completed and finalized form. . . is not a "preliminary draft or note", as the term is utilized in § 1-19 (b)(1) G.S. Conversely, it is also concluded that the preliminary placement of the requested record in the decision-making process of a public agency does not qualify it for exemption from mandatory disclosure as such a "preliminary draft or note".
(Return of Record ("ROR"), Item 8, Final Decision dated January 28, 1998 pp. 58-59.)
In the present appeal, the plaintiff argues that the commission erred in finding that the document at issue was not a "preliminary draft or note" because it had "been edited into complete and finalized form" by Weinberger and because of its "preliminary placement of the requested record in the decision-making process of a public agency."
The fact that the document at issue was "edited into complete and finalized form" by Weinberger when he submitted to the deputy comptroller is of little consequence. As stated by our Supreme Court: exemption 1-120 (b)(1) "contemplates two types of agency documents: one that is "final" and another that is "preliminary." The distinction between these two types of documents does not consist of the extent to which the person or persons from whom they originate expects to alter them." Wilson v. Freedom ofInformation Commission, supra, 332.[4] see also Shew v. Freedomof Information Commission, supra, 245 Conn. 165. "Instead, . . . preliminary drafts or notes relates to advisory opinions, recommendations and deliberations comprising part of the process CT Page 6993 by which government decisions and policies are formulated . . . Such notes are predecisional. They do not in and of themselves affect agency policy, structure or function. They do not require particular conduct or forbearance on the part of public. Instead, preliminary drafts or notes reflect that aspect of the agency's function that precedes formal and informed decision making. We believe that the legislature sought to protect the free and candid exchange of ideas, the uninhibited proposition and criticism of options that often precedes, and usually improves the quality of, governmental decisions. It is records of this preliminary, deliberative and predecisional process that we conclude the exemption was meant to encompass." Wilson v. Freedomof Information Commission, supra, 181 Conn. 333; see also Shew v.Freedom of Information Commission, supra, 165. Accordingly, in order to determine whether the memorandum at issue is preliminary and predecisional it is necessary to consider the agency's decision making mechanisms and the significance of the document within that structure. 37A Am.Jur.2d, Freedom of Information Acts § 215 (1994).
The plaintiff claims that the commission failed to decide key issues of fact. Specifically, the plaintiff argues that although the commission made findings of fact that Weinberger drafted the memorandum and forwarded it to the deputy comptroller, the commission made no findings on what the deputy comptroller did with the memorandum after he received it. According to the plaintiff, the commission gave no consideration to the evidence on the record that the document at issue was used by the deputy comptroller to create preliminary proposals for reorganization, later submitted to the State Comptroller, Nancy Wyman.
"[W]here, the administrative agency has failed to decide key issues of fact, the court should not perform that function on appeal. Guadino v. Board of Firearms Permit Examiners, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 387791 (December 5, 1991, Maloney, J.) (7 C.S.C.R. 100). Where an administrative agency has failed to make necessary factual findings, the court cannot determine on appeal whether the agency's conclusions of law "reasonably and logically follow from such facts." City of New Haven v. Freedom of InformationCommission, 205 Conn. 767, 774 (1988). In cases where an administrative agency has not made elemental findings of fact, the appropriate remedy is to remand the case so that the agency may make the requisite findings based on the evidence in the record. Guadino v. Board of Firearms Permit Examiners, supra, CT Page 6994 Superior Court, Docket No. 387791.
In this case, the commission's decision did not consider the agency's decision making process and the significance of the document at issue within that process. The court, under the constraints of the UAPA, is unable to travel "a different path rather than determining whether the commission properly trod on the stepping stones of the path it took." Windham v. Freedom ofInformation Commission, 48 Conn. App. 522, 527, cert. denied,245 Conn. 913 (1998); Hartford v. Freedom of Information Commission,41 Conn. App. 67, 74 (1996).
If the commission determines on remand, applying the principles set forth in this decision, that the document at issue is indeed a preliminary draft or note under General Statutes § 1-210 (b)(1), the commission is directed to then determine whether that the public interest in withholding such documents clearly outweighs the public interest in disclosure under General Statutes 1-2 10(b)(1) and whether the preliminary document is exempt under General Statutes 1-210 (c)(1).
Based on the foregoing, the plaintiffs administrative appeal is sustained and the case is remanded for further proceedings in accordance with this decision.
Michael Hartmere, J.