COALITION TO SAVE HORSEBARN HILL ET AL. *v.*
FREEDOM OF INFORMATION COMMISSION ET AL.
(AC 22178)

Schaller, Bishop and Peters, Js.

---

Argued June 3—officially released October 15, 2002

*Nancy Burton,* for the appellants (plaintiffs).

*William N. Kleinman,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Bernard F. McGovern, Jr.,* assistant attorney general, for the appellees (defendant University of Connecticut et al.).

*Victor R. Perpetua,* appellate attorney, for the appellee (named defendant).

PETERS, J. General Statutes § 1-210 (a), a central provision of the Freedom of Information Act, gives members of the public the right of access to public records. The question in this case is whether that statute was violated by the nondisclosure of drafts of a proposed agreement between the University of Connecticut and a private pharmaceutical company for the construction of a joint development project at the university's Storrs campus. This question must be resolved in accordance with General Statutes § 1-210 (b) (1), which permits the nondisclosure of preliminary drafts only when nondisclosure is in the public interest.[1] Like the prior decision makers in this case, we conclude that nondisclosure was proper under the circumstances of this case. We affirm the judgment of the trial court.

The plaintiffs, the Coalition to Save Horsebarn Hill, Richard L. Sherman and Ainslie Gilligan, sought access to documents relating to construction of a now cancelled joint project of the University of Connecticut (university) and Pfizer, Inc. (Pfizer).[2] The university denied their requests. In consolidated complaints, the

[1] General Statutes § 1-210 (b) provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of: (1) Preliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure . . . ."

[2] The defendants named in the action before the commission were the university board of trustees and the board's assistant executive secretary. In the administrative appeal to the trial court, the plaintiffs named the commission as one of the defendants. They also named as defendants the office of the attorney general; assistant attorney general Paul M. Shapiro; Susan A. Locke, the assistant executive secretary of the board of trustees; and the university board of trustees. Because the interests of this latter group appear to be identical, unless the context otherwise requires, the contrary, we will refer to these defendants as the university.

plaintiffs asked the freedom of information commission (commission) to order disclosure of the documents that they had requested.

After the commission denied the plaintiffs' claims for relief, they appealed to the trial court. The court held that the commission had not abused its discretion by refusing to order disclosure of the documents at issue. It also rejected the plaintiffs' claim that a new commission hearing should be held to enable the plaintiffs' claims to be heard by a hearing commissioner who did not have a conflict of interest.[3] The court dismissed the plaintiffs' appeal on that ground. In their appeal to this court, the plaintiffs renew the arguments that they presented to the trial court.

The scope of our review of the merits of the plaintiffs' argument is governed by a provision of the Freedom of Information Act (FOIA), General Statutes § 1-206 (d), and complementary rules of the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq.[4] "[W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand

---

[3] At trial, the commission and the university asked the court to dismiss the administrative appeal on the ground of lack of jurisdiction because of the plaintiffs' alleged lack of aggrievement. The court held that aggrievement had been shown. This issue is not before us on this appeal.

[4] General Statutes § 1-206 (d) provides in relevant part that "[a]ny party aggrieved by the decision of [the freedom of information] commission may appeal therefrom, in accordance with the provisions of section 4-183. . . ."

General Statutes § 4-183 (a) provides in relevant part that "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement." (Citations omitted; internal quotation marks omitted.) *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 164–65, 635 A.2d 783 (1993); *Rocque* v. *Freedom of Information Commission*, 255 Conn. 651, 658, 774 A.2d 957 (2001). Because in this case the issues of statutory construction are fact bound, the parties agree that the abuse of discretion standard governs this appeal.

I

DISCLOSURE

The plaintiffs' principal argument is that the commission improperly determined, pursuant to § 1-210 (b) (1), that the documents they sought were preliminary drafts and that the public interest in withholding access to these preliminary drafts outweighed the public interest in disclosure. They focus separately on whether the documents at issue were, in fact, preliminary drafts, and whether the commission misjudged the public interest in their disclosure. The plaintiffs' arguments do not persuade us that these factual findings were an abuse of the commission's discretion.

The undisputed facts are reported in the trial court's memorandum of decision. "On April 3, 1998, the board [of trustees] authorized the university's administration to 'enter into agreements with [Pfizer] for the construction of a Center for Excellence in Vaccine Research, located on Horsebarn Hill Road.' Essential elements of the agreements included (1) a land lease, (2) construction of the facility by Pfizer with full design participation

by [the university], (3) a leaseback of 20 percent of the facility to [the university] for nominal consideration, and (4) management of the entire facility by [the university], under a separate management contract with Pfizer. While there is some dispute among the parties as to who produced the first draft, it is uncontroverted that after the board's authorization, Pfizer and [the university] exchanged various drafts of the proposed agreements until the project was canceled sometime in August of 1999.

"On April 5, 1999, [the plaintiff] Gilligan telephoned the offices of the board [of trustees] and spoke to [Susan A.] Locke [the assistant executive secretary of the board of trustees], requesting agreements entered into by [the university] and Pfizer. The request yielded only the authorization letter dated April 3, 1998.

"Meanwhile, in early April of 1999, [the plaintiff] Sherman contacted state Senator Edith Prague (Prague) and told her of his concerns regarding the proposed project, asking for her assistance in obtaining the documents. Prague then orally requested access to any contract documents pertaining to the [the university]-Pfizer project from assistant attorney general Paul M. Shapiro (Shapiro), who retains copies of the documents. The request was denied.

"The plaintiffs then appealed [from the university's] decision to withhold the information to the [commission], alleging that the defendants violated the Freedom of Information Act by denying them access to the requested agreements. . . . On June 2, 1999, the matter was heard as a contested case before commissioner Norma Riess, the hearing officer for the case."

Without contesting these subsidiary facts, the plaintiffs maintain that the commission abused its discretion in its ultimate finding that the draft documents of the proposed agreement between the university and Pfizer

were exempt from disclosure. It is common ground that (1) the university is a public agency that must comply with the FOIA, (2) the documents that the plaintiffs sought to inspect were public records pursuant to General Statutes § 1-210 (a) of the FOIA, and (3) all the factual findings in the decision of the commission support its determination that the draft documents were eligible for nondisclosure pursuant to § 1-210 (b) (1). The plaintiffs' appeal, therefore, challenges the validity of the commission's findings of fact.

## A

*Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 332–33, 435 A.2d 353 (1980), defined "preliminary drafts" in a manner that our courts subsequently have uniformly applied. "[T]he term 'preliminary drafts or notes' relates to advisory opinions, recommendations and deliberations comprising part of the process by which government decisions and policies are formulated. . . . Such notes are predecisional. They do not in and of themselves affect agency policy, structure or function. They do not require particular conduct or forbearance on the part of the public. Instead, preliminary drafts or notes reflect that aspect of the agency's function that precedes formal and informed decision making. We believe that the legislature sought to protect the free and candid exchange of ideas, the uninhibited proposition and criticism of options that often precedes, and usually improves the quality of, governmental decisions. It is records of this preliminary, deliberative and predecisional process that we conclude the exemption was meant to encompass." (Citations omitted.) Id.; see also *Shew* v. *Freedom of Information Commission*, 245 Conn. 149, 163–64, 714 A.2d 664 (1998); *Van Norstrand* v. *Freedom of Information Commission*, 211 Conn. 339, 344, 559 A.2d 200 (1989).

The plaintiffs contend that the commission misapplied the *Wilson* definition in this case. They assert that the draft documents did not fall within the statutory construct of preliminary drafts because (1) they were not drafted by the university and (2) they were drafted at a time when the university had concluded its decisional process. We are not persuaded.

In support of their argument, the plaintiffs first posit that it was Pfizer that initiated the draft documents and that the documents were, therefore, not exempt from disclosure. They disagree with the trial court's statement that "there is some dispute among the parties as to who produced the first draft." Although there was testimony at the commission hearing that Pfizer had initiated the drafts, the commission had no obligation to find that testimony more credible[5] than that of a witness who testified that it was impossible to determine who had created the drafts.

The commission did not expressly find who had initiated the drafts, but found that, regardless, they fell within the definition of "preliminary drafts." In effect, the commission took the view that it did not matter who had initiated the exchange of draft proposals. The plaintiffs disagree. They maintain that draft documents that were, at least in part, created by a private organization, rather than by the university, are not the kinds of documents that are protected from disclosure to the public. As best we can tell, this is an issue of first impression.

The plaintiffs argue that this issue should be resolved in favor of disclosure. They remind us that the purpose of the FOIA is to allow the public to have access to public records. We agree that the legislature's interest

---

[5] The plaintiffs were unsuccessful in their efforts to add such findings to the final decision of the commission.

in public disclosure counsels a narrow construction of statutory exemptions.

The plaintiffs call to our attention the fact that General Statutes § 1-200 includes among the records that ordinarily must be disclosed to the public "information . . . received or retained by a public agency."[6] General Statutes § 1-200 does not, however, address the § 1-210 (b) (1) exemption for preliminary drafts. In this case, it is conceded that the draft documents were public records.

We conclude that any and all public records consisting of preliminary draft documents are eligible for nondisclosure as preliminary drafts regardless of their provenance. The text of § 1-210 (b) (1) makes no distinction between some public records and others. "Where there is no ambiguity in the legislative commandment, this court cannot, in the interest of public policy, engraft amendments onto the statutory language." *Burnham* v. *Administrator*, 184 Conn. 317, 325, 439 A.2d 1008 (1981). The commission did not abuse its discretion in finding, without expressly identifying who had initiated them, that the documents were preliminary drafts.

The plaintiffs' second argument is that the commission abused its discretion in finding the draft documents to be preliminary drafts because, in the view of the plaintiffs, the documents were not "preliminary." They maintain that the record before the commission demonstrates that the exchange of documents occurred at a time when the parties already had agreed to the terms of their contract. We are not persuaded that this is an accurate reading of the document on which the plain-

---

[6] General Statutes § 1-200 provides in relevant part: "(5) 'Public records or files' means any recorded data or information relating to the conduct of the public's business prepared, owned, used, received or retained by a public agency, whether such data or information be handwritten, typed, tape-recorded, printed, photostated, photographed or recorded by any other method."

tiffs rely, the authorization to proceed with the development of the project that was approved by the university's board of trustees.

The record shows that the board of trustees unmistakably contemplated a future contract when it "authorized the administration to enter into agreements with Pfizer, Inc. . . . that 'will' contain certain specified essential elements. The board identified certain features of the project that "will be the essential elements of the agreements." Further, the "essential elements" identified by the board did not include other essential terms such as the time period for construction and the amount of Pfizer's compensation.

The identification of the essential elements of a contract depends "on the particular circumstances of each case." *Willow Funding Co., L.P.* v. *Grencom Associates*, 63 Conn. App. 832, 845, 779 A.2d 174 (2001). A question about the existence of a contract is a question that must be decided by the finder of facts. *Pagano* v. *Ippoliti*, 245 Conn. 640, 654, 716 A.2d 848 (1998).

Under the circumstances of this case, the commission was not obligated to find that the draft documents were exchanged *after* the university had definitely committed itself to a binding contract with Pfizer. The commission did not abuse its discretion in determining that the draft documents were "preliminary drafts" under § 1-210 (b) (1).

## B

The plaintiffs argue that, even if the draft documents were preliminary drafts, the commission abused its discretion when it agreed with the university that the public interest in the nondisclosure of the documents outweighed the public interest in their disclosure. Section 1-210 (b) (1) requires such a finding as a condition for nondisclosure.

The university's position was based on the fact that the state and the university engage in many real estate transactions. The university opined that its future ability to negotiate such agreements would be drastically impaired by disclosure of the preliminary drafts in this case. The commission heard credible testimony to that effect.

The plaintiffs nonetheless maintain that the university's position was not taken in good faith. They assert that the university's reasons for nondisclosure were frivolous and patently unfounded. While it is true that the commission could have found that these were proper characterizations of the university's position, it patently did not do so. The plaintiffs do not point to anything in the return of record that would have *required* the commission to make a different finding. We cannot speculate about facts that the plaintiffs might have elicited had they been afforded a broader right to cross-examine the witness who explained the university's position.[7]

The plaintiffs also fault the commission's finding for another reason. They argue that the commission should have assigned more weight to the fact that, during the pendency of the commission proceedings, the university abandoned any further consideration of the building project. The university's decision was announced after the commission hearings had been concluded. Although the plaintiffs had thus achieved their primary goal, they continued their quest for documentation relating thereto. In order to pursue this quest in light of the university's decision, the plaintiffs moved that the hearing be opened. This motion was denied.

The plaintiffs' motion implicitly conceded that, as a general matter, the abandonment of a contemplated

---

[7] The plaintiffs have not raised a separate claim of evidentiary error in this appeal.

project does not automatically require the disclosure of preliminary drafts relating thereto. They have not questioned the holding of our Supreme Court in *Shew* v. *Freedom of Information Commission,* supra, 245 Conn. 165, that documents properly may be characterized as preliminary even when they are not "subject to further alteration." They point out, however, that *Shew* did not consider the role that abandonment of a project might play in deciding whether the public interest in disclosure is outweighed by the public interest in nondisclosure.

The plaintiffs focus their argument on their interpretation of the reason that the university had given for its decision to deny the plaintiffs access to the draft documents. They describe the university's reason for nondisclosure as arising from "the perceived necessity to maintain secrecy during negotiations." In their view, the university's objection to the plaintiffs' requests related only to the contract negotiations in this case. We disagree. The evidence presented to the commission was not so limited. The university's witness testified that the university's concern was "not just for this case" but also for future leasehold negotiations The witness further testified that the university made contracts public only after the contracts had been formally accepted as legally binding obligations. In consideration of this record, the commission did not abuse its discretion in denying the plaintiffs' motion to open the hearing.

C

When the legislature enacted § 1-210 (b) (1), it conferred upon the commission the discretion to decide whether the public records of a public agency were "preliminary drafts or notes" that, in the view of the agency, were such that "the public interest in withholding such documents clearly [outweighed] the public interest in disclosure . . . ." General Statutes § 1-210

(b) (1). In this case, the agency made such a finding. Our examination of the reasons advanced by the plaintiffs persuades us that the relevant findings of the commission do not demonstrate an abuse of the commission's discretion. As did the trial court, we conclude that the documents at issue were preliminary drafts that, under the circumstances of this case, were properly withheld from public scrutiny.

## II

### CONFLICT OF INTEREST

In addition to their arguments with respect to disclosure, the plaintiffs argue that the decision of the commission should be set aside because Reiss, the presiding officer in the commission hearing, had a disqualifying conflict of interest. Before the close of commission proceedings, the plaintiffs filed a second motion requesting that the hearing be opened to inquire into the possibility of a conflict of interest arising out of the fact that Reiss had had a professional relationship with John Downey, a member of the university's board of trustees. As the hearing officer, Reiss denied the motion. The commission as a whole agreed with Reiss. The trial court found that the commission's decision was not an abuse of discretion. We agree.

In their appeal, the plaintiffs maintain that the commission's denial of their motion was an abuse of the commission's discretion and that Reiss, sua sponte, should have disqualified herself from presiding over the commission proceedings. The underlying facts are described in two affidavits that were filed during the pendency of the court proceedings.

The first affidavit stated the reasons that Reiss had given to the entire commission, on October 27, 1999, before it issued its final decision, for her denial of the motion to open. At that time, she stated that she knew

Downey as a result of their associations in politics in the town of Redding and their membership on Governor John G. Rowland's reelection finance committee. She further stated that she had "never raised money from or for John Downey."

The commission implicitly agreed with the denial of the plaintiffs' motion. It adopted as its final decision the proposed final decision that Reiss had drafted.

Only in an amended affidavit, dated October 18, 2000, did Reiss disclose that Downey had been her treasurer when she ran for second selectman in 1995 and that he had made a $50 or $100 contribution to her campaign. This affidavit postdated the plaintiffs' filing of their administrative appeal.

The trial court, after consideration of both affidavits, concluded that the commission did not abuse its discretion in denying the plaintiffs' motion to open the proceedings for a further inquiry into Reiss' alleged conflict of interest. It relied on *Clisham* v. *Board of Police Commissioners*, 223 Conn. 354, 361–62, 613 A.2d 254 (1992), in which our Supreme Court held that "[t]he mere appearance of bias that might disqualify a judge will not disqualify an arbitrator." (Internal quotation marks omitted.) It further held that, to prevail on their claim of administrative disqualification, the plaintiffs were required to show that Riess in fact had prejudged their case or that a disinterested observer would have thought so. Without stating whether the plaintiffs had met this test, the court found that the plaintiffs had not shown that they had suffered any harm as a result of the alleged conflict of interest. On this basis, the court found that the denial of the plaintiffs' second motion to open was not an abuse of the commission's discretion.

On appeal, without challenging the court's statement of legal principles, the plaintiffs argue that the court's finding on the issue of prejudice was improper. Specifi-

cally, they take issue with the court's statement that they could not prove that they had been harmed "because the court had already found that the commission's decision correctly applied the law." They argue, without elaboration, that they were in fact prejudiced by the commission's decision, with which they strenuously disagree. Other than making this bald assertion, however, the plaintiffs provide no further basis for their claim. We have found no authority, and the plaintiffs have cited none, for the proposition that a party may establish prejudice on the ground of its disagreement with the legal conclusions that a tribunal has reached.

We conclude, therefore, that the plaintiffs have not established that the commission abused its discretion in any respect. The trial court properly came to the same conclusion.

The judgment is affirmed.

In this opinion the other judges concurred.