******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# RICHARD LINDQUIST *v.* FREEDOM OF INFORMATION COMMISSION
## (AC 42496)

Bright, C. J., and Alvord and Cradle, Js.

*Syllabus*

Pursuant to statute (§ 1-210 (b) (1)), the Freedom of Information Act does
not require the disclosure of preliminary drafts or notes provided the
public agency has determined that the public interest in withholding
them outweighs the public interest in disclosure.

Pursuant further to statute (§ 1-210 (e) (1)), notwithstanding § 1-210 (b)
(1), disclosure is required of such documents as advisory opinions and
recommendations comprising part of the process by which governmental
decisions are formulated.

The plaintiff, L, a tenured professor at the defendant health center, C Co.,
appealed to this court from the judgment of the trial court dismissing his
appeal from the final decision of the defendant Freedom of Information
Commission. After the completion of his annual performance review,
as required by C Co.'s bylaws, L requested certain documents and com-
munications related to the review. C Co. disclosed records within which
it made various redactions, including to comments and ratings made
by individual committee members about L's evaluation. L appealed to
the commission, which found that the redacted portions of the requested
records were permissibly exempt pursuant to § 1-210 (b) (1) and (e) (1).
L then appealed to the trial court, which concluded that the commission
correctly determined that C Co., pursuant to § 1-210 (b) (1), properly had
resolved the balance between secrecy and disclosure of the preliminary
drafts or notes in good faith and that § 1-210 (e) (1) did not require
production of the committee members' final comments and ratings
because they were "preliminary" to the committee's recommendation
to the dean of C Co. regarding L's evaluation, and dismissed L's appeal.
On L's appeal to this court, *held*:

1. The trial court properly concluded that the commission did not abuse
its discretion in finding that the redacted records were exempt from
disclosure under § 1-210 (b) (1), as those records were preliminary drafts
or notes within the meaning of that statute: the redacted records at
issue consisted of the individual comments and ratings of the committee
members made during the deliberative process of the multistep commit-
tee process during which the committee members deliberated in the
form of stated impressions in order to reach a finalized collective recom-
mendation for the dean, and the stated individualized impressions, in
and of themselves, preceded the formal and informed collective recom-
mendation of the committee; moreover, the commission did not abuse
its discretion when it determined that the benefit of withholding the
records at issue outweighed the public interest in disclosure, as it found
that C Co. determined that public disclosure of the records would have
a chilling effect on the willingness of the committee members to provide
the candid assessments that were necessary to ensure an objective
evaluation process.

2. The trial court abused its discretion when it dismissed L's appeal, and
improperly concluded that the commission had correctly applied § 1-
210 (e) (1) to the final comments and ratings that were delivered to the
dean because § 1-210 (e) (1) required the requested documents to be
produced, even though disclosure would not otherwise be required
under § 1-210 (b) (1); the final individual comments and ratings provided
by the committee members were used in the dean's deliberative process
and were part of a completed, not draft, document, and were precisely
the type of documents that our Supreme Court stated in *Van Norstrand*
v. *Freedom of Information Commission* (211 Conn. 339) should be
produced pursuant to § 1-210 (e) (1); moreover, the record did not
support the conclusion of the commission that the redacted records did
not contain recommendations, as although the individual committee
members' comments and ratings were initially submitted as recommen-
dations for the purpose of the committee's deliberations, the final version

of the comments and ratings served as recommendations for the purpose of the dean's review of the faculty member's rating, and the trial court and the commission misapplied the term "preliminary" as it is used in § 1-210 (e) (1).

Argued September 15, 2020—officially released March 30, 2021

*Procedural History*

Administrative appeal from the decision of the defendant dismissing the plaintiff's complaint regarding a records request submitted to the University of Connecticut Health Center, brought to the Superior Court in the judicial district of New Britain, where the court, *Hon. George Levine*, judge trial referee, granted a motion to intervene as a party defendant filed by the University of Connecticut Health Center; thereafter, the matter was tried to the court, *Hon. Henry S. Cohn*, judge trial referee; judgment dismissing the appeal, from which the plaintiff appealed to this court. *Reversed*; *judgment directed*.

*Richard Lindquist*, self-represented, the appellant (plaintiff).

*Paula Sobral Pearlman*, commission counsel, with whom, on the brief, was *Colleen M. Murphy*, general counsel, for the appellee (defendant).

*Lynn D. Wittenbrink*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (intervening defendant).

*Opinion*

BRIGHT, C. J. The self-represented plaintiff, Richard Lindquist, at all relevant times, a tenured professor at the defendant University of Connecticut Health Center (health center), appeals from the judgment of the trial court dismissing his appeal from the final decision of the defendant Freedom of Information Commission (commission), in which the trial court concluded that the commission correctly dismissed the plaintiff's request for certain documents of the health center relating to his annual performance review. On appeal, the plaintiff claims that (1) the trial court failed to consider whether the commission failed to apply various provisions of the Freedom of Information Act (act), General Statutes § 1-200 et seq., including General Statutes §§ 1-200 (6), 1-210 (b) (2), 1-213 and 1-225, and General Statutes (Rev. to 2015) § 1-214, and chapters 563 and 563a of the General Statutes, (2) the trial court improperly concluded that the commission properly applied § 1-210 (b) (1) and (e) (1) of the act to the records at issue, (3) the trial court improperly rejected the due process claim raised by the plaintiff, and (4) the commission failed to comply with General Statutes §§ 1-210 (b) (2) and 10a-154a. We agree, in part, with the plaintiff's second claim, as it relates to § 1-210 (e) (1), that he is entitled to judgment in his favor requiring the disclosure of the final individual comments and ratings by the committee members that were delivered to the dean of the University of Connecticut School of Medicine (dean), and, accordingly, we reverse the judgment of the trial court and remand the case to that court with direction to render judgment for the plaintiff. In light of our resolution on the basis of the plaintiff's second claim, we need not reach the plaintiff's other claims.

The following background is relevant to this appeal. In May, 2016, the plaintiff was a tenured faculty member of the Department of Pathology and Lab Medicine at the health center. As a faculty member, the plaintiff was annually evaluated pursuant to the health center's bylaws. During the evaluation process, a faculty member meets with his or her department's chairperson. The faculty member and the chairperson discuss the past year's performance and arrive at ratings for five categories. In particular, the chairperson indicates whether the faculty member's performance is "not acceptable," "marginal," "acceptable," or "superior" for the categories of education, research, administrative, transition, and excellence. Each of the individual evaluations is weighted by the percent effort for the category. On that basis, the chairperson then assigns an aggregate evaluation that corresponds to an overall evaluation of "superior," "acceptable," "marginal," or "not acceptable."

In the next step of the evaluation process, a file is

prepared for the Merit Plan Executive Committee (committee) to review the chairperson's evaluation for consistency among all departments. An overall evaluation of "acceptable" does not require further action by the committee unless the faculty member contests the rating. In the event that a faculty member contests an overall evaluation of "acceptable," the chairperson's evaluation is subject to review by the committee.

Overall evaluations of "not acceptable," "marginal," or "superior" are reviewed by the committee. If the committee disagrees with the chairperson's evaluation after reviewing the file, it will recommend a different rating and refer the file to the dean for a final decision. The information provided to the dean includes a joint recommended rating by the committee and the final individual comments and ratings of the committee members regarding the person being evaluated. It is the committee members' final individual comments and ratings regarding the plaintiff that are at issue in this appeal.

With this background in mind, we turn to the specific facts and procedural history relevant to the plaintiff's claims on appeal. In May, 2016, after completion of his most recent annual review, the plaintiff, relying on the act, sent to the respondents[1] a request via e-mail for "[c]opies of all documents and communications, including but not limited to, electronic and written [records] related to my [annual] review."[2] In response to the plaintiff's request, the health center disclosed 908 pages of records, within which it made various redactions. The redactions fell into two categories. First, the health center redacted any information that related to faculty members other than the plaintiff. Second, the health center redacted comments and ratings made by the individual committee members about the plaintiff's evaluation, their individual agreement or disagreement with the chairperson and with each other, and individual assessments of merit in each particular category and on an aggregate basis. The health center redacted the commentary on the basis that the disclosure of the redactions would have a potential substantial effect on the willingness of the individual members to participate in the evaluation process and that it otherwise was not required under the act.

On May 23, 2016, the plaintiff appealed to the commission, alleging that the respondents violated the act by failing to provide the plaintiff with the requested documents and communications. After the plaintiff appealed to the commission, the health center provided the plaintiff with approximately 200 additional pages of documents, some of which also contained redactions of the individual comments and ratings of the committee members regarding the plaintiff's evaluation. The additional records came primarily from the chairperson, the individual members of the committee, and the associate

dean for faculty affairs. The redactions at issue before the commission were those that redacted the comments and ratings by the individual members of the committee about the plaintiff.

Three contested case hearings were held before the commission. At the hearings, the health center claimed that the redacted records were exempt from disclosure pursuant to § 1-210 (b) (1), which provides that nothing in the act should be construed to require the disclosure of preliminary drafts or notes provided that the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure. See General Statutes § 1-210 (b) (1). Scott Simpson, the freedom of information officer for the health center, testified that the final individual comments and ratings by the committee members regarding the plaintiff were not disclosed because they are made as part of the deliberative process prior to the final joint committee recommendation. According to Simpson, this information consists of deliberations about the plaintiff's ratings and the members' individual agreements or disagreements prior to providing a collective recommendation to the dean.

Simpson also provided the following testimony as to the purpose of the committee. The committee guards against bias and inconsistency in the ratings. The committee makes a generic or committee based recommendation that may reflect, generally, the individual comments made by the committee during the deliberative process. Simpson also testified that a single member cannot make a recommendation to the dean. Individual comments and ratings are maintained by Richard Simon, the nonvoting plan administrator of the annual review. After the committee arrives at a final joint recommendation, the committee recommendation and the printout of the final individual comments and ratings of the committee members are submitted to the dean, who makes the final decision. The dean sees the final comments and ratings by the committee members and the joint recommendation, the latter of which has been disclosed to the plaintiff.

At the second case hearing, Simon testified that a chairperson's evaluation will be reviewed by a three member committee in certain scenarios. If the majority of the three member committee agrees with the chairperson's evaluation, then Simon is authorized to approve the chairperson's evaluation without the dean's final review. During Simon's testimony, Simpson interjected that if the majority of the three member committee cannot agree with the chairperson's evaluation, then the full ten member committee reviews the evaluation. In the plaintiff's case, on at least one occasion, the three member committee did not agree with the chairperson's preliminary evaluation, so the full committee reviewed the evaluation.

Simon also described the committee's review process. The review process involves committee members submitting comments and proposed ratings to a database on a website. Members can reply to each other's comments. Furthermore, committee members can change their comments and proposed ratings throughout the process. They can also request changes by e-mailing Simon, who enters the changes into the database. Members can also request a change if certain items are flagged for discussion, where upon such a request, a meeting takes place where the committee members can change their votes. Any changes made to the comments or ratings during the deliberative process effectively write over the previous comments and ratings, deleting them from the database. After the committee members have completed their commenting process, the website has a box to check if committee members believe that deliberation beyond the comments is required. If the box is checked at the end of the commenting process, then as many meetings as necessary are conducted to discuss the items that have been earmarked for discussion. After all of the commenting and deliberations have concluded, Simon prints out from the database the final individual ratings and final comments of the members and presents them to the dean with the committee's joint final recommended rating. Thus, the dean has access to the entire application with the supporting data, the chairperson's recommendation, the chairperson's justification, the joint rating of the committee, and the final comments and ratings of each member.

Simon went on to testify that the full committee begins the deliberative process with the assumption that the chairperson will prevail. If a simple majority of the eligible voting members of the full ten member committee[3] votes to overturn the chairperson's evaluation, then it will recommend a different rating and refer the plaintiff's evaluation to the dean for a final decision.

Simon and Simpson both testified that the joint recommendation to the dean is a number rating that represents the final joint recommendation of the committee. The number rating corresponds to the members' individual assessments of merit in each particular category, and then on an aggregate basis. This final number rating representing the joint collective recommendation of the committee is separate from the individual comments and ratings, which precede the collective number rating.[4]

Following the contested case hearings, the commission made the following findings and conclusions in its final decision. The commission found that the respondents' annual review is a yearly evaluation process. During the evaluation process, faculty members receive one of the following four performance ratings: superior, acceptable, marginal, and not acceptable. A faculty

member's annual review can influence salary or trigger a post-tenure review. The committee, consisting of three members or ten voting members and one nonvoting plan administrator, reviews the evaluation of a department chairperson, and makes a recommendation to the dean. The dean reviews the recommendation of the committee and then makes a final and independent annual rating decision. The dean's final rating decision can be appealed to another administrative body.

The plaintiff's requested records were public records within the meaning of General Statutes §§ 1-200 (5), 1-210 (a), and 1-212 (a). Although the plaintiff requested all documents and communications related to his post-tenure review, Simpson determined, after speaking with the plaintiff about the request, that he was seeking documents and communications related to his annual process and any post-tenure review. Simpson limited the breadth of his search to the five years preceding the respondents' receipt of the request. The commission determined that the plaintiff found the parameters of the search were acceptable. The plaintiff received all of the committee's joint, unredacted recommendations from either a three member committee or a full committee to the dean along with the dean's unredacted final rating decision. Simpson reported that all responsive records, which included redactions, were disclosed to the plaintiff.

The commission found that the redactions at issue in the plaintiff's appeal were the deliberative comments made by members of the committee during the review process. The commission found that committee members, who are reviewing a department chairperson's annual evaluation or a post-tenure review matter, can send their initial impressions on the matter to the nonvoting member of the committee, Simon, via e-mail. The committee members can also log into a database and record their impressions in that forum. The commission found that the redactions at issue concern the process by which committee members deliberate with each other in order to reach a recommendation for the dean. The plaintiff sought the committee members' comments among themselves, whether such comments occurred among a three member panel or among the full membership of the committee.

The commission concluded that the respondents did not violate the act as alleged in the complaint and further concluded that the redacted portions of the requested records are permissibly exempt pursuant to § 1-210 (b) (1). The commission found that the comments among the members of the committee precede a formal and informed recommendation to the dean, the committee members' comments are "notes," within the meaning of § 1-210 (b) (1), and the respondents properly determined that the public interest in withholding the notes clearly outweighed the public interest

in disclosure on the basis that public disclosure of the records would have a chilling effect on the willingness of the members to provide the candid assessments necessary to ensure an objective evaluation process. The commission also found, without explanation, that the redacted portions of the requested records are not inter-agency or intra-agency memoranda, letters, advisory opinions, recommendations or reports within the meaning of § 1-210 (e) (1). On April 28, 2017, the plaintiff filed a petition for reconsideration of the final decision, which the commission denied.

On June 21, 2017, the plaintiff appealed to the Superior Court, pursuant to General Statutes § 4-183, from the commission's final decision. The plaintiff claimed that (1) the health center violated § 1-225 because the committee members had not reduced their comments to writing, (2) the health center erred because the committee votes must be taken in public, (3) the health center violated provisions of the act relating to executive sessions, (4) his rights to due process will be violated because the commission's final decision precludes him from asserting his employment rights, (5) the redacted records at issue are not preliminary drafts or notes, (6) the commission improperly concluded that the health center had in good faith determined that the preliminary notes should be exempt pursuant to § 1-210 (b) (1) because the public interest in withholding the documents outweighs the public interest in disclosure, and (7) the commission erred in its application of § 1-210 (e) to the comments of the committee members. As relief, the plaintiff sought production of the redacted final comments and ratings from the committee members that were delivered to the dean for his final review.[5]

The trial court issued a memorandum of decision, in which it dismissed the plaintiff's appeal. The court declined to rule on the following issues raised by the plaintiff because the claims were not asserted before the commission: (1) the health center violated § 1-225 because the committee members had not reduced their comments to writing, (2) the health center erred because the committee votes must be taken in public, and (3) the health center violated provisions of the act relating to executive sessions. The court also held that the plaintiff's due process claim could not be raised in an administrative appeal before the trial court. As to the remaining claims, the court concluded that the individual comments and ratings that the committee members made during the deliberative process constituted preliminary drafts or notes that were exempt from disclosure under § 1-210 (b) (1). It concluded further that the commission correctly determined that the health center, pursuant to § 1-210 (b) (1), properly had resolved the balance between secrecy and disclosure of the preliminary drafts or notes in good faith. The court further concluded that § 1-210 (e) (1) did not

require production of the committee members' final comments and ratings because they were "preliminary" to the committee's recommendation to the dean. This appeal followed.

The plaintiff claims that the trial court improperly concluded that the commission properly determined that the redacted records at issue, the final versions of the comments and ratings of the members of the committee that were delivered to the dean with the committee's joint recommended rating, were exempt from disclosure under the act pursuant to § 1-210 (b) (1) and (e) (1). The plaintiff argues that the redacted records he seeks are the final result of the committee's administrative function. The health center argues, to the contrary, that the redacted records constitute exempt preliminary drafts or notes because they consist of the individual comments and ratings of the committee members, which preceded both the committee's joint recommendation and the dean's final decision. We agree with the defendants that the trial court properly concluded that the commission correctly determined that the redacted records at issue were exempt pursuant to § 1-210 (b) (1). However, for the reasons set forth in part II of this opinion, we disagree with the defendants that the trial court properly concluded that the commission correctly determined that the redacted records were exempt pursuant to § 1-210 (e) (1).

"The scope of our review of the merits of the plaintiffs' argument is governed by a provision of the [act], General Statutes § 1-206 (d), and complementary rules of the Uniform Administrative Procedure Act . . . General Statutes § 4-166 et seq. [W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement." (Footnote omitted; internal quotation marks omitted.) *Coalition to Save Horsebarn Hill* v. *Freedom of Information Commission*, 73 Conn. App. 89, 92–93, 806 A.2d 1130 (2002), cert. denied, 262 Conn. 932, 815 A.2d 132 (2003). Where, as in this case, the application of the statute to the documents at issue is fact bound, the abuse of discretion standard governs the appeal. Id.

By way of background, we discuss briefly the policy

of the act. "[T]he overarching legislative policy of [the act] is one that favors the open conduct of government and free public access to government records. . . . [I]t is well established that the general rule under the [act] is disclosure, and any exception to that rule will be narrowly construed in light of the general policy of openness expressed in the [act]. . . . [Thus] [t]he burden of proving the applicability of an exception [to disclosure under the act] rests upon the party claiming it." (Citation omitted; internal quotation marks omitted.) *Lieberman* v. *Aronow*, 319 Conn. 748, 754–55, 127 A.3d 970 (2015).

I

We first address the plaintiff's claim that the trial court improperly concluded that the commission properly determined that the redacted records at issue were exempt pursuant to § 1-210 (b) (1). Section § 1-210 (b) (1) provides: "Nothing in the Freedom of Information Act shall be construed to require disclosure of: . . . Preliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure . . . ." Consequently, a party claiming that records are exempt from disclosure under § 1-210 (b) (1) must prove, first, that the records are preliminary drafts or notes and, second, that the public interest in withholding the documents clearly outweighs the public interest in disclosure. See *Lewin* v. *Freedom of Information Commission*, 91 Conn. App. 521, 526, 881 A.2d 519, cert. denied, 276 Conn. 921, 888 A.2d 88 (2005).

With respect to § 1-210 (b) (1), "*Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 332–33, 435 A.2d 353 (1980), defined preliminary drafts in a manner that our courts subsequently have uniformly applied. [T]he term preliminary drafts or notes relates to advisory opinions, recommendations and deliberations comprising part of the process by which government decisions and policies are formulated. . . . Such notes are predecisional. They do not in and of themselves affect agency policy, structure or function. They do not require particular conduct or forbearance on the part of the public. Instead, preliminary drafts or notes reflect that aspect of the agency's function that precedes formal and informed [decision-making]." (Internal quotation marks omitted.) *Coalition to Save Horsebarn Hill* v. *Freedom of Information Commission*, supra, 73 Conn. App. 95.

"Preliminary is defined as something that precedes or is introductory or preparatory. As an adjective it describes something that is preceding the main discourse or business. A draft is defined as a preliminary outline of a plan, document or drawing . . . . By using the nearly synonymous words preliminary and draft, the legislation makes it very evident that preparatory materials are not required to be disclosed." (Citation

omitted; emphasis omitted; internal quotation marks omitted.) *Van Norstrand* v. *Freedom of Information Commission*, 211 Conn. 339, 343, 559 A.2d 200 (1989).

"[T]he concept of preliminary [within the meaning of § 1-210 (b) (1)], as opposed to final, should [not] depend upon . . . whether the actual documents are subject to further alteration. . . . [P]reliminary drafts or notes reflect that aspect of the agency's function that precedes formal and informed [decision-making]. . . . It is records of this preliminary, deliberative and predecisional process that we conclude the exemption was meant to encompass." (Citation omitted; internal quotation marks omitted.) *Shew* v. *Freedom of Information Commission*, 245 Conn. 149, 165, 714 A.2d 664 (1998).

Applying these principles to the present case, we conclude that the commission correctly determined that the redacted records are preliminary drafts or notes within the meaning of § 1-210 (b) (1). The redacted records at issue consist of the individual comments and ratings of the committee members made during the deliberative process of the multistep committee process during which the committee members deliberate in the form of stated impressions in order to reach a finalized, collective recommendation for the dean. The stated individualized impressions, in and of themselves, precede the formal and informed collective recommendation of the committee.

The plaintiff argues that, even if the commission properly determined that the redacted records are preliminary drafts or notes within the meaning of § 1-210 (b) (1), the commission improperly determined that the benefit of withholding the records at issue outweighs the public interest in disclosure. The plaintiff contends that withholding the records hinders the ability to justify the use of public funds to support a state employee's salary. The health center argues that it provided sufficient reasoning establishing that the chilling effect on candid, uninhibited discussion met the statutory requirements of § 1-210 (b) (1). We disagree with the plaintiff and conclude that the commission did not abuse its discretion when it determined that the benefit of withholding the records at issue outweighs the public interest in disclosure.

"The responsibility for balancing those public interests rests specifically with the public agency involved. . . . However, the statute's language strongly suggests that the agency may not abuse its discretion in making the decision to withhold disclosure. The agency must, therefore, indicate the reasons for its determination to withhold disclosure and those reasons must not be frivolous or patently unfounded." (Citation omitted; internal quotation marks omitted.) *Lewin* v. *Freedom of Information Commission*, supra, 91 Conn. App. 526.

In its final decision, the commission found that the respondents determined that public disclosure of the records would have a chilling effect on the willingness of the committee members to provide the candid assessments that are necessary to ensure an objective evaluation process. At the December 8, 2016 hearing before the commission, Simon testified that allowing disclosure would have a chilling effect on the deliberative process. In addition to his testimony at the hearing, Simon testified in an affidavit that he is able to solicit honest and candid assessments from the committee members because of an assurance that their honest and candid assessments will be confidential. Simon testified further that, without the assurance of confidentiality, he is certain that there would be a chilling effect on the willingness of the committee members to provide the candid assessments that are necessary to ensure a fair, objective, and unbiased evaluation process and, therefore, allowing disclosure would cause committee members to quit. Our review of the reasons set forth by the health center persuades us that the commission did not abuse its discretion in finding that the notes were exempt from disclosure under § 1-210 (b) (1).

## II

The plaintiff next claims that, even if the notes were exempt from disclosure pursuant to § 1-210 (b) (1), the commission abused its discretion in its application of § 1-210 (e) (1) to the records at issue. We agree with the plaintiff.

Section 1-210 (e) (1) provides: "Notwithstanding the provisions of subdivisions (1) and (16) of subsection (b) of this section, disclosure shall be required of: . . . Interagency or intra-agency memoranda or letters, advisory opinions, recommendations or any report comprising part of the process by which governmental decisions and policies are formulated, except disclosure shall not be required of a preliminary draft of a memorandum, prepared by a member of the staff of a public agency, which is subject to revision prior to submission to or discussion among the members of such agency." "Documents that qualify for the [§ 1-210 (b) (1)] exemption nonetheless may be disclosable under [§ 1-210 (e) (1)] if they constitute interagency or intra-agency memoranda or letters, advisory opinions, recommendations or any report comprising part of the process by which governmental decisions and policies are formulated . . . . The disclosure provisions of [§ 1-210 (e) (1)] are qualified, however, in that disclosure shall not be required of a preliminary draft of a memorandum, prepared by a member of the staff of a public agency, which is subject to revision prior to submission to or discussion among the members of such agency . . . ." (Citation omitted; internal quotation marks omitted.) *Shew* v. *Freedom of Information Commission*, supra, 245 Conn. 165–66.[6]

The issue to be resolved in the present case is whether the final comments and ratings of the committee members, which are delivered to the dean, fall under the preliminary draft subject to revision exemption within § 1-210 (e) (1). Thus, we begin by determining the meaning of the exemption. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *McCall* v. *Sopneski*, 202 Conn. App. 616, 622, A.3d (2021). "The intent of the legislature, as [our Supreme Court] has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say." (Internal quotation marks omitted.) *Commissioner of Emergency Services & Public Protection* v. *Freedom of Information Commission*, 330 Conn. 372, 393, 194 A.3d 759 (2018).

"In analyzing [§ 1-210 (e) (1)], we must . . . construe the words used according to their commonly approved usage. . . . While the language initially removes many kinds of material from the exempt status, this additional requirement for disclosure is immediately qualified in two important respects. First, the material to be disclosed must [comprise] part of the process by which governmental decisions and policies are formulated. Second, disclosure shall not be required of a preliminary draft of a memorandum, prepared by a member of the staff of a public agency, which is subject to revision prior to submission to or discussion among the members of such agency." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Van Norstrand* v. *Freedom of Information Commission*, supra, 211 Conn. 347.

The commission, here, found that the "redacted portions of the requested records are not interagency or intra-agency memoranda, letters, advisory opinions, recommendations or reports, within the meaning of § 1-210 (e) (1) . . . ." It provided no rationale for this conclusion. Similarly, the health center's appellate brief provides no analysis of this issue other than to state that the commission's finding was appropriate and not an abuse of discretion. In its appellate brief, the commission argues that § 1-210 (e) (1) does not apply to the redacted member comments because "[t]he records at

issue, as identified at the [commission], are comprised of the [committee] members' individual thoughts and impressions, which preceded a formal and informed recommendation to the [d]ean," and that "[t]he fact that the comments and ratings may be printed out onto one document (from the database) does not transform such information into memoranda, letters, advisory opinions, recommendations, nor reports." (Internal quotation marks omitted.) The trial court apparently adopted this reasoning because it held that § 1-210 (e) (1) did not apply because the members' stated impressions and the individual scores the committee members gave during the process were "preliminary."

The plaintiff argues that the committee members' final comments and ratings are memoranda, reports, or recommendations, and that they were not preliminary, as that term is used in § 1-210 (e) (1), because they were available to and relied on by the dean in making his final performance rating of the plaintiff.[7] We agree with the plaintiff that the final comments and ratings of the committee members constitute recommendations.

"In the absence of a statutory definition, words and phrases in a particular statute are to be construed according to their common usage. . . . To ascertain that usage, we look to the dictionary definition of the term." (Internal quotation marks omitted.) *Picco* v. *Voluntown*, 295 Conn. 141, 148, 989 A.2d 593 (2010). A "recommendation" is defined as "[t]he act of recommending" and "[s]omething that recommends; specifically a favorable statement concerning character or qualifications" of someone. The American Heritage Dictionary of the English Language (5th Ed. 2011) p. 1469. The term "recommend" is defined as "[t]o praise or commend to another as being worthy or desirable; endorse," "[t]o make attractive or acceptable," and "[t]o advise or counsel [that something be done]." Id.

The record, here, does not support the conclusion of the commission that the redacted records do not contain recommendations. According to the testimony provided at the case hearings, the individual comments and ratings are evaluations by the committee members of the work of their peers. The evidence in the record and the testimony provided at the case hearings describe the committee members' commentary as agreements or disagreements with the chairperson's evaluation. The committee members, in general, also provide a rationale for their comments. The dean is presented with the final commentary of the committee members, observes why the committee members voted in a certain manner, and reviews the individual comments and ratings when arriving at a final decision. The final comments and ratings provided by the committee members are no less of a recommendation as to how the plaintiff should be reviewed than is the chairperson's evaluation. Furthermore, the record is clear that the

dean reviews these final comments and ratings when deciding how to rate the plaintiff. Thus, although the individual committee members' comments and ratings are initially submitted as recommendations for the purpose of the committee's deliberations, the final version of the comments and ratings serve as recommendations for the purpose of the dean's review of the faculty member's rating. As mentioned earlier in this opinion, the comments and ratings include the committee members' individual agreement or disagreement with the chairperson and with each other, and individual assessments of merit in each particular category and on an aggregate basis. These comments and ratings in effect "counsel or advise" the dean in determining whether to approve the faculty rating provided by the joint committee or by the chairperson, especially in light of the "generic" recommendation provided by the joint committee. Therefore, the individual committee members' comments and ratings are recommendations for the purpose of the dean's determination, and, thus, they constitute "recommendations . . . comprising part of the process by which governmental decisions and policies are formulated . . . ." General Statutes § 1-210 (e) (1). Section 1-210 (e) (1) therefore requires that they be disclosed unless they fall under that section's exemption for "preliminary draft[s] of a memorandum . . . ." We conclude that they do not fall under the exemption. Accordingly, we conclude that the trial court and the commission misapplied the term "preliminary," as it is used in § 1-210 (e) (1).

Section 1-210 (e) (1) exempts from disclosure "preliminary draft[s] of a memorandum, prepared by a member of the staff of a public agency, which is subject to revision prior to submission to or discussion among members of such agency." Both the court and the commission concluded that the comments of the committee members were "preliminary" because they preceded the dean's final recommendation. Although that is a proper interpretation of how the word is used in § 1-210 (b) (1), it is clear that "preliminary" has a more limited meaning in § 1-210 (e) (1). Under that section, a memorandum is preliminary if it is "subject to revision prior to submission . . . ." General Statutes § 1-210 (e) (1). Applying this definition to the facts of this case, the preliminary comments and ratings by the committee members that were subject to revision after discussion among the committee members were preliminary and not subject to disclosure. However, the final comments and ratings by each committee member that were delivered to the dean were no longer subject to revision, and the individual comments and ratings by each committee member were utilized by the dean to review why the committee members voted in a certain manner. Accordingly, those comments and ratings were not "preliminary" under the definition provided in § 1-210 (e) (1). Significantly, the plaintiff only seeks disclosure of the

final comments and ratings provided by the committee members and not their preliminary comments and ratings that may have been revised, to the extent that those documents still exist.

We conclude that this is the only logical conclusion that can be reached by reading § 1-210 (b) (1) and (e) (1) together, particularly given that § 1-210 (e) (1) specifically was adopted, at least in part, to require disclosure of preliminary notes and drafts that otherwise would be protected from disclosure under § 1-210 (b) (1).

Our Supreme Court's decision in *Wilson* v. *Freedom of Information Commission*, supra, 181 Conn. 324, provides helpful context to the interplay of § 1-210 (b) (1) and (e) (1). In *Wilson*, our Supreme Court addressed whether recommendations from members of a program review committee (PRC) established by the University of Connecticut that were made to the plaintiff, the vice president of academic affairs, were required to be disclosed under what is now § 1-210 (b) (1) of the act. "The function of the PRC was to review the operations of the various academic departments of the university and to make recommendations to [the plaintiff] aimed at improving efficiency in those departments. The recommendations, which took the form of periodic memoranda directed to [the plaintiff], included changes in the existing administrative structure and programs within the university." Id., 326. The issue before the court in *Wilson* was whether the memoranda provided to the plaintiff constituted preliminary notes or drafts that were exempt from disclosure. See id., 327. "Both the commission and the trial court concluded that the PRC documents were not preliminary drafts or notes. They based this conclusion on the fact that the documents in question are final drafts as far as the PRC is concerned, not subject to alteration; they are separate, distinct and completed documents in and of themselves." (Footnote omitted; internal quotation marks omitted.) Id., 330–31.

Our Supreme Court disagreed and held that "the term preliminary drafts or notes relates to advisory opinions, recommendations and deliberations comprising part of the process by which government decisions and policies are formulated. . . . Such notes are predecisional. They do not in and of themselves affect agency policy, structure or function. They do not require particular conduct or forbearance on the part of the public. Instead, preliminary drafts or notes reflect that aspect of the agency's function that precedes formal and informed [decision-making]. We believe that the legislature sought to protect the free and candid exchange of ideas, the uninhibited proposition and criticism of options that often precedes, and usually improves the quality of, governmental decisions. It is records of this preliminary, deliberative and predecisional process that

we conclude the exemption was meant to encompass."
(Citations omitted; internal quotation marks omitted.)
Id., 332–33.

*Wilson* predated the adoption of § 1-210 (e) (1). In
fact, our Supreme Court, in *Van Norstrand* v. *Freedom
of Information Commission*, supra, 211 Conn. 346 n.3,
noted that the legislative history of No. 81-431 of the
1981 Public Acts demonstrates that the enactment of
what is now § 1-210 (e) (1) was motivated in part by
the Supreme Court's decision in *Wilson*.[8] Thus, in *Wilson*, our Supreme Court held that comments and recommendations, very similar to those at issue in the present
case, were protected from disclosure because they were
preliminary notes or drafts under § 1-210 (b) (1). *Wilson*
v. *Freedom of Information Commission*, supra, 181
Conn. 332–33. In response, our legislature added § 1-210 (e) (1) to the act to require the production of such
records unless they were subject to further revision
before being transmitted interagency or intra-agency.
Reading "preliminary" to cover any document that precedes the final decision of an agency, as the court and
the commission did in this case, essentially renders § 1-210 (e) (1) meaningless.

Our conclusion also is consistent with our Supreme
Court's analysis in *Van Norstrand* v. *Freedom of Information Commission*, supra, 211 Conn. 339. In *Van Norstrand*, the Journal Inquirer newspaper sought disclosure from the speaker of the House of Representatives
"of the data he had obtained as the result of a survey of
members of the Connecticut Bar Association evaluating
various characteristics of the judges of the Superior
Court. . . . The qualities of the individual judges evaluated included judicial integrity, demeanor, diligence,
caseflow management, familiarity with current law,
soundness of written rulings and worthiness for retention. Fifteen hundred completed questionnaires were
returned. The questionnaires included evaluations of
judges who were not scheduled for reappointment in
1986, as well as those of judges who were [scheduled
for reappointment].

"The data thus acquired were thereafter compiled in
a numerical format for all of the judges. Those with the
least favorable ratings were reviewed by the plaintiff
to determine which of them were scheduled for reappointment in 1986. After this, the information concerning judges not due for reappointment was excised from
the final survey results. The plaintiff testified that the
only purpose in gathering information about those
judges whose terms were not expiring in 1986 was to
ensure general statistical reliability. The excised data
were not presented to the legislature or to any legislative committee nor were they used in any way in the
legislative [decision-making] process." Id., 340–41.

The issue in *Van Norstrand* was whether the survey
information related to judges not scheduled for reap-

pointment in 1986 had to be disclosed. The court determined that the information did not have to be disclosed because it was included in a preliminary draft as defined in § 1-210 (e) (1). Id., 343–48. Critical to the court's analysis were "the fact that the data concerning judges not scheduled for reappointment were obtained solely to establish the statistical validity of the survey; and . . . the fact that the requested information was thereafter excised as irrelevant from the summary before it was circulated or used in the deliberative process." Id., 343. Significantly, the court further explained: "Had the purpose of the survey been to compile data with respect to all judges in the state which would thereafter be used in connection with their respective reappointments, whenever they might be, then the [commission] would be correct in asserting that the survey was not a *draft* document but rather a *completed* document." (Emphasis in original.) Id.

In this case, the final individual comments and ratings provided by the committee members to the dean were used in the dean's deliberative process and were part of a completed, not draft, document. Consequently, they are distinguishable from the draft information withheld in *Van Norstrand*. Instead, they are precisely the type of documents that our Supreme Court in *Van Norstrand* stated should be produced pursuant to § 1-210 (e) (1). Accordingly, we conclude that the trial court improperly concluded that the commission had correctly applied § 1-210 (e) (1) to the final comments and ratings at issue in the present case.

Because § 1-210 (e) (1) requires the requested documents to be produced, even though disclosure would not otherwise be required under § 1-210 (b) (1), the trial court abused its discretion when it dismissed the plaintiff's appeal.[9] The plaintiff is entitled to judgment in his favor requiring the disclosure of the final comments and ratings by the committee members that were delivered to the dean. In light of this conclusion we need not address the plaintiff's other claims that the trial court failed to consider whether the commission failed to apply certain statutes of the act and chapters 563 and 563a of the General Statutes, his due process rights have been or will be violated as a result of the commission's decisions, and other statutes mandate disclosure of the documents.

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiff.

In this opinion the other judges concurred.

[1] The named respondents before the commission were the Chief Executive Officer for Health Affairs of the health center and the health center.

[2] The plaintiff's request actually referred to a "post-tenure" review. The annual evaluative process may lead to a post-tenure review of a tenured faculty member if the faculty member receives at least two "marginal performance" ratings in a five year period that commences when tenure is awarded or it may lead to a post-tenure review if the faculty member receives one "not acceptable performance" rating. Although the health center originally indicated that the plaintiff had been subjected to a post-tenure review, during

the hearings before the commission, the plaintiff affirmed that the health center's invocation of the post-tenure review process was a procedural error; the plaintiff was never subject to post-tenure review.

[3] Although the full committee has ten voting members, a committee member can recuse himself or herself from voting on the faculty member's rating if they feel it is appropriate to do so. In the case of the plaintiff's evaluation process, Simpson testified that the plaintiff's chairperson would normally recuse herself because the plaintiff was in her department.

[4] The record is unclear as to how the individual assessments of merit in each particular category, and then on an aggregate basis, correspond to the final number rating representing the joint recommendation to the dean.

[5] Although the plaintiff's prayer for relief in his complaint provides that the health center "should promptly provide the redacted performance evaluation" to the plaintiff, his complaint makes clear that he is seeking the final comments and ratings provided to the dean. He similarly confirmed at oral argument before this court that he is seeking only the final committee member comments and ratings that were provided to the dean. In addition, the complaint concedes that it is appropriate for the health center to maintain the anonymity of the authors of the comments.

[6] Although both the commission and health center cite to *Shew* in their appellate briefs, they do so only as to the definition of "preliminary" under § 1-210 (b) (1). They do not discuss or rely on the court's analysis in that case of the applicability of § 1-210 (e) (1) to the documents requested. Although neither appellee relies on *Shew* to argue that the individual committee recommendations delivered to the dean were preliminary drafts subject to revision, we have considered the applicability of *Shew* to our analysis and conclude that its facts are distinguishable as they relate to the application of § 1-210 (e) (1). At issue in *Shew* were the summaries of interviews conducted by an outside attorney retained by the town of Rocky Hill. See *Shew* v. *Freedom of Information Commission*, supra, 245 Conn. 151. The court held that the attorney was a member of the staff of the town for purposes of the predecessor to § 1-210 (e) (1), and her summaries that later were incorporated into a report prepared by the town constituted preliminary drafts subject to revision. See id., 165–67. Unlike the attorney's summaries in *Shew*, the final comments and ratings of the committee members in the present case were not subject to revision for inclusion in a final report. Instead, they constituted the final recommendations of the members, which the dean used in determining the final rating to give the plaintiff.

[7] The plaintiff does not claim that the committee members' commentary constitutes a letter and merely references "advisory opinions" in a bare assertion that the redacted records must be disclosed to the plaintiff. See *Electrical Contractors, Inc.* v. *Dept. of Education*, 303 Conn. 402, 444, 35 A.3d 188 (2012) ("It is well established that [w]e are not obligated to consider issues that are not adequately briefed. . . . Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived." (Internal quotation marks omitted.)).

[8] During the Senate proceedings discussing the bill, its proponent, Senator Wayne A. Baker made the following remarks: "[T]his bill originated in the Government Administration and Elections Committee and its purpose was to overturn the Supreme Court's holding in a case of [*Wilson* v. *Freedom of Information Commission*, supra, 181 Conn. 324]. . . . And so this bill would require the disclosure of all interagency and intra-agency documents which are part of the process of governmental decision-making and this would include letters, advisory opinions, recommendations or any record of agency deliberations by which governmental decisions and policies are formulated or when a record does constitute a preliminary draft or [note], unless the public interest in nondisclosure clearly outweighs the public interest in disclosure. . . .

"And finally, House Amendment D broadened the exemption from disclosure for preliminary drafts of memos by striking a requirement in House Amendment A that any subsequent revision would be by the author of the memo. The effect is to exempt preliminary drafts of memos by agency staff, memos which are subject to revision by anyone. . . .

"The Act creates broad rights of public access to the records of meetings of all public agencies. It also contains a limited number of exceptions to the general rule of disclosure and openness. All of this is consistent with the Freedom of Information laws intent that the people have the fundamental right to know in a timely fashion not only what governmental decisions are but what considerations go into those decisions. Unfortunately, our Supreme Court has said in the case of [*Wilson* v. *Freedom of Information Commis-*

*sion*, supra, 181 Conn. 324] that the [act] should be interpreted as having the same meaning as the federal act even where their language and legislative policy are dissimilar. Mr. President, this bill basically reaffirms and clarifies the original intent and purpose in light of that case. It makes clear, hopefully once and for all, that the deliberative process of government agencies shall be open to the public except where the legislature alone determines a superior public interest in confidentiality." 24 S. Proc., Pt. 17, 1981 Sess., pp. 5418–23, remarks of Senator Wayne A. Baker.

In addition to Senator Baker's statement, Senator Clifton A. Leonhardt remarked: "I think that if the [*Wilson*] decision had been allowed to stand, there really would have been such a large gap or loophole in the Freedom of Information's statutes for interagency and intra-agency memorandas that it really would have, in effect gutted the Freedom of Information statutes." Id., pp. 5423–24, remarks of Senator Clifton A. Leonhardt. Senator Leonhardt further remarked: "As I listen to this colloquy, Mr. President, I think Senator Baker is correct that there will certainly be some cases that are somewhat close and that will require interpretation by the [c]ommission, but I do think that there is a clear and fundamental distinction between the types of documents that this bill will make open to public inspection. [Intra-agency], excuse me, interagency or [intra-agency] memoranda or letters, advisory opinions, recommendations or any report comprising part of the process by which governmental decisions and policies are formulated, that on the one hand implies a finished government document which is having an impact on decision-making is a decision-making document. I think that is quite a clear thing, as compared to the long-standing exception under the Freedom of Information law in the file copy in lines 50 to 53, preliminary drafts and notes provided the public agency is determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure. So, I think on the one hand one is talking about a finished document and on the other hand, one is talking about preliminary drafts or notes and so I think that again, the [government administration and elections] committee is to be commended on drawing a clear and proper distinction here and one that will not allow the preliminary drafts and notes exception to be so much expanded that it eventually swallows the rule of disclosure." Id., pp. 5428–29.

[9] To the extent we consider the health center's policy argument that requiring disclosure of the final comments and ratings by committee members will chill the discussion that is a necessary part of the peer review process and discourage faculty members from serving on the committee, we are not persuaded. The health center can protect from disclosure the comments and ratings by the committee members by choosing not to disclose them to the dean, and, instead, by providing the dean with just the joint final recommendation of the committee. If the health center did so, the committee members could discuss freely their views of the person they are evaluating, without worry that their comments and ratings would be made public.